[Sac. No. 1729.   Department One.—February 10, 1910.]

In the Matter of the Estate of LUCY A. SNOWBALL, Deceased. LEUTIE C. SNOWBALL et al., Proponents of Will, Appellants, v. NORMAN P. SNOWBALL and H. H. SNOWBALL, Contestants, Respondents.

WILLS—CONTEST OF PROBATE—UNDUE INFLUENCE—SUPPORT OF FINDING —REVIEW UPON APPEAL—CONFLICTING EVIDENCE.—Where the contest of the probate of a will is sustained on the ground of undue influence, a finding upon that issue is supported by the clear and positive testimony of interested and hostile witnesses of such a nature as to warrant the verdict, if the jury believed it to be true, even if the conflicting evidence for the proponent was preponderating. All questions of credibility of witnesses and of the weight of the testimony were exclusively for the jury and for the trial court. The rule is the same in will contests as in other proceedings; and a verdict or finding in such a case will not be disturbed where there is a real and substantial conflict upon the issues of fact involved.

ID.—FAILURE OF JURY TO FIND UPON ISSUE OF FRAUD—EVIDENCE OF FRAUD BEARING ON UNDUE INFLUENCE.—Where the grounds of the contest of the will were both fraud and undue influence, the failure of the jury to find against the proponents upon the issue of fraud did not preclude it from considering evidence of fraud as bearing upon the issue of undue influence.

ID.—RELATION OF UNDUE INFLUENCE TO FRAUD.—Although undue influence and fraud are not the same thing, and one may exist without the other, yet undue influence may be exerted by means of fraud. Confidence or influence may be used to obtain an unfair advantage over another in a variety of ways; and no less by means of fraudulent misrepresentations than by means of duress or other pressure.

ID.—RULE OF PROOF OF UNDUE INFLUENCE.—While it is true that there must be proof that the influence was used directly to procure the will, general influence not brought to bear upon the testamentary act not being undue influence, yet such proof exists where the evidence is of such a nature as to warrant the inference that the will was the direct result of the influence exerted for the purpose of procuring it, and was not the natural result of the uncontrolled will of the testator.

ID.—WILL THE DIRECT RESULT OF UNDUE INFLUENCE—MISREPRESENTATIONS OF FACT INDUCED—AGED MOTHER CONTROLLED.—Where it appears that the mother was naturally fond of all of her children, but in her old age and physical weakness, she was so controlled and influenced by her daughter as to induce her to insert misrepresentations of fact against her son in her will, and practically to disinherit him, and the sum and substance of the contestants' evidence was

that the testatrix was unable to resist the importunities of her
daughter, so that the will, as concerns the contestants, was in reality
the will of the daughter, and not that of the testatrix, it sufficiently
warrants the conclusion that the undue influence was exercised
directly upon the testamentary act, and that the will was the direct
result thereof.

ID.—EVIDENCE—DECLARATIONS OF TESTATRIX—NATURAL STATE OF MIND
—TESTAMENTARY INTENT—PROOF OF UNDUE INFLUENCE.—Evidence
was admissible to show the declarations of the testatrix prior to the
execution of the will showing her natural state of mind, and her
testamentary intent toward all of her children and to provide well
for her son, not for the purpose of proving undue influence, which
was proved by independent evidence, showing how the mother was
induced by the daughter to do otherwise.

ID.—RULE AS TO DECLARATIONS NOT PART OF RES GESTÆ—CONDITION OR
STATE OF MIND.—The rule in this state is that declarations not part
of the *res gestæ* are inadmissible in proof or disproof of any state-
ment contained in them; but, wherever the condition or state of
mind of the declarant is a material matter, declarations of a testator
legitimately tending to shed light on that question are admissible
solely for the purpose of showing his then condition or state of
mind, the effect being carefully limited to the question of his condi-
tion of mind.

ID.—DECLARATIONS TENDING TO SHOW UNDUE INFLUENCE OVER STATE OF
MIND.—Evidence is admissible to show declarations of the daughter
and testatrix, or of the one in presence of the other not denied,
tending to show a then effort to control the state of mind of the
testatrix by undue influence of the daughter, setting her mind
against the son to his prejudice, and to show the manner in which
the undue influence over her state of mind was exercised, the extent
to which it was exercised, and the effect thereof.

ID.—DECLARATIONS OF MOTHER AS TO CONTROLLING INFLUENCE OF
DAUGHTER—IMPLIED ADMISSION.—Evidence was admissible to show
that, upon the mother's refusal to allow the son the temporary use
of a cultivator, he asked her why she treated him that way, where-
upon she cried, and said, in the hearing of her daughter: "I can't
help it. Leutie makes me do it," to show the daughter's implied
admission of the statement by silence, of her then exercise of undue
influence over her mother against the son.

ID.—EVIDENCE OF DAUGHTER'S CHANGE OF ATTITUDE TOWARD MOTHER
AFTER FATHER'S DEATH—FORMER UNKIND AND CRUEL ACTS.—Evi-
dence was admissible to show that prior to her father's death, the
daughter was unkind and cruel toward her mother, and to show the
declarations of the mother to the son in the presence of the daughter
not denied, as to acts of cruelty committed by the daughter, and
to show her entire change of attitude toward her mother after the
father's death, for the purpose of unduly influencing the testa-
mentary act of the mother against her son.

ID.—QUESTION FOR JURY AS TO WHETHER DECLARATIONS WERE ADMITTED. —Where the daughter denied the declarations testified to by the son,. as having been made in her presence, it was a question of fact for the jury whether they were made in her presence, and under such. circumstances as to imply an admission of their truth.

ID.—RULE AS TO IMPLIED ADMISSIONS.—Evidence may be given upon a. trial of an act or declaration of another in the presence and within the observation of a party and his conduct in relation thereto, for the purpose of showing such conduct on his part as will constitute acquiescence in and admission of the truth of the statement; and when it is of such a nature and made in such a way as to naturally call for a denial, if not true, a failure to deny the same may be reasonably taken as an admission of its truth.

ID.—OPINION EVIDENCE OF SON—MENTAL WEAKNESS OF MOTHER—CROSS-EXAMINATION — "EASILY INFLUENCED" — RESPONSIVE ANSWER.— Where the son testified in chief that his mother was to a certain extent weak mentally, and was asked on cross-examination what he meant by that answer and responded that she was "easily in-- fluenced," the answer was responsive to the question, and the appel- lant had no right to have it stricken out as volunteered and not responsive to the question.

ID.—OPINION AS TO "EASILY INFLUENCED" PERSON—MERE CONCLUSION. —Questions as to whether a person was one "easily influenced" call' for mere opinions and conclusions from facts.

ID.—DOCTRINE AS TO EXCLUSION OF ADMISSIONS OF ONE BENEFICIARY INAPPLICABLE.—The doctrine that admissions of one beneficiary as to- the mental capacity of a testatrix cannot be proved, is inapplicable- to evidence of declarations and implied admissions tending to show actual undue influence exercised by the daughter over the mother in procuring the testamentary act, which is necessarily admissible on: that issue.

ID.—EVIDENCE TENDING TO SHOW FALSE REPRESENTATIONS.—Evidence- tending to show false representations made by the daughter to her mother as to the amount of property received by the son from his father, for the purpose of influencing the mother against him, was. admissible as clearly within the issues.

ID.—UNDUE INFLUENCE—UNJUST WILL AS A CIRCUMSTANCE—VALUE OF ESTATE.—While an unjust will does not of itself raise the presump- tion of undue influence, the nature of the will may be considered by the jury upon the issue of undue influence as a circumstance, and. the value of the estate left by the testatrix is necessarily a factor in determining its nature.

ID.—IMPEACHING EVIDENCE—CONTRARY STATEMENTS—FOUNDATION NOT LAID.—The court properly disallowed evidence of contrary state- ments made by a witness where no foundation had been laid there- for.

ID.—ABSENCE OF PREJUDICIAL ERROR IN INSTRUCTIONS.—It is held that there was no prejudicial error in the instructions given, or in the modification or refusal of requested instructions.

ID.—INSTRUCTION CONDITIONED ON INTESTACY.—It cannot be assumed that proponents were prejudiced by an instruction that if deceased had died without a ' will, her estate would descend to her children share and share alike, where the jury were clearly and emphatically instructed that the will could not be set aside on the ground that it is not in accord with the law of succession, or unjust or capricious.

ID.—INSTRUCTION AS TO UNJUST WILL.—An instruction to the effect that while an unjust will does not of itself raise a presumption of undue influence, the nature of the will may be considered by the jury as a circumstance in determining whether fraud or undue influence was exercised, was correct.

APPEAL from an order of the Superior Court of Yolo County denying a new trial. E. E. Gaddis, Judge.

The facts are stated in the opinion of the court.

R. H. Countryman, and Hudson Grant, for Appellants.

Arthur C. Huston, and Grover C. Julian, for Respondents.

ANGELLOTTI, J.—This is an appeal from an order denying a new trial of the issues made by the petition for the probate of the alleged will of the deceased, and the opposition thereto filed by Henry H. and Norman P. Snowball, two of her five surviving children.

There were several grounds of opposition to the probate of the alleged will, but only two were relied on at the trial, viz.: That the will was the result of undue influence exerted over the deceased by A. L. Snowball and Leutie C. Snowball, two of her children, and that the execution thereof was procured by fraud of the same parties. Upon the issue of fraud the jury did not return a verdict. On the issue of undue influence, the finding of the jury was in favor of the contestants. On this verdict an order was made denying admission of the alleged will to probate.

1. It is contended that the evidence is insufficient to support the finding of undue influence. An examination of the record shows that there was clear and positive evidence of such a nature as to warrant the finding if the evidence was believed by the jury to be true. It should be needless to

state that it can make no difference in an appellate court that such evidence was given by interested and hostile witnesses, or that the appellate court may be of the opinion that the preponderance of evidence was against the finding of the jury. All questions of the credibility of witnesses and of the weight to be given to their testimony were exclusively for the jury and the trial judge. The rule is the same in will contests as in other proceedings, and a verdict or finding in such a case will not be disturbed "where there is a real and substantial conflict of evidence on the issue of fact involved." (*Estate of Doolittle,* 153 Cal. 30, [94 Pac. 240].)

It will not be necessary to indulge in any extended statement of the evidence given on behalf of the contestants, but a few words may properly be said as to the general nature thereof.

Preliminarily it should be said that the fact that the jury did not find against proponents upon the issue whether the will was procured by fraud, did not preclude it from considering evidence of fraud as bearing upon the issue of undue influence. This matter was recently discussed by Mr. Justice Sloss in the *Estate of Ricks,* Cal. Oct. 27, 1909, [38 Cal. Dec. 401], and while a rehearing was granted in that case upon another point, what was said by him on this point was clearly correct. There, as here, the jury found against proponents on the issue of undue influence, and failed to return a verdict on the issue of fraud. It was said:

"Undue influence is not the same thing as fraud. One may exist without the other. Undue influence may, however, be exerted by means of fraud. (29 Am. and Eng. Ency. of Law, 2d ed. p. 107; *Davis* v. *Calvert,* 5 Gill and J. (Md.) 269, [25 Am. Dec. 282]; *Powell* v. *Plant,* (Miss.) 23 South. 399; *Eckert* v. *Flowry,* 43 Pa. St. 46; *Robinson* v. *Robinson,* 203 Pa. St. 400, [53 Atl. 253].) 'Fraud,' says the court in *Davis* v. *Calvert,* 5 Gill and J. (Md.) 269, [25 Am. Dec. 282], 'is a distinct head of objection from importunity and undue influence. Importunity and undue influence may be fraudulently exerted but they are not inseparably connected with fraud.' To the same effect is the following language taken from the opinion of Strong, J., in *Eckert* v. *Flowry,* 43 Pa. St. 46: 'Now, that is undue influence which amounts to constraint, which substitutes the will of another for that of the testator.

It may be either through threats or fraud, but however exer-
cised, it must, in order to avoid a will, destroy the free agency
of the testator at the time the instrument is made.' And this
view is entirely consistent with our code definition of undue
influence above quoted.    Confidence or influence may be used
to obtain an unfair advantage over another in a variety of
ways, and no less by means of fraudulent misrepresentations
than by means of duress or other pressure.    The fact that the
jury returned no answer to the interrogatory based on the
issue of fraud did not preclude them from considering evi-
dence of fraud as bearing upon the issue of undue influence."

H. H. Snowball was practically disinherited by the will,
being given thereby only the sum of one thousand dollars, the
estate being valued at something like thirty-five thousand dol-
lars, and the other four children being given the remainder
in practically equal shares  except for legacies amounting to
twenty-two hundred and fifty dollars; and except that con-
testant Norman was given only a life interest in the Snowball
home place and that Leutie C. Snowball, the only daughter,
was given all the personal property on such place.    The will
stated that the reason testatrix made no further provision for
H. H. Snowball was that her husband made provision for him
and his children and that he had been already provided for,
the truth of which statement as to him was positively denied
by the evidence of contestants.    The will was executed April
8, 1907, less than three months before the death of deceased.
At the time of its execution, the testatrix was about seventy
years of age.    From the time of the death of her husband,
February 5, 1906, the testatrix lived with her daughter,
Leutie, on the home place.    The evidence indicated that up to
the time of the death of her husband and for some time there-
after, the testatrix and her son, H. H. Snowball, were on the
most affectionate terms.    The testimony of the contestants
tended to show that from the time of her husband's death
testatrix became gradually weaker physically and more de-
pendent on and more subject to the influence of her daughter,
that the daughter systematically and constantly exerted this
influence for the purpose of producing a change in the feel-
ings of testatrix towards said son by making unwarranted
accusations against him, that testatrix yielded more and more
to the importunities of the daughter, that by many acts she

showed herself to be completely under the influence of her daughter and ready to yield to all her desires in regard to said son, that the daughter importuned testatrix to make a will by the terms of which said son should not receive as much as the other children, and that finally in response to such importunities, the testatrix, shortly before a contemplated medical operation, went with her daughter to the office of a lawyer and there, while the daughter remained in another room, made the will in question. According to the evidence of contestants, the reason stated in the will for the small provision made for said son was absolutely without basis in fact. The sum and substance of contestants' evidence was that the testatrix was unable to resist the importunities of her daughter and made the will under the influence thereof, so that so far as provision for H. H. Snowball was concerned, the will was in reality the will of the daughter and not that of the testatrix. There is nothing in the claim that the undue influence was not exercised directly upon the testamentary act. There was sufficient in the evidence of contestants to support a conclusion that it was used purely for the purpose of procuring the will, and that the will was the direct result thereof. While it is true that there must be proof that the influence was used directly to procure the will, general influence not brought to bear upon the testamentary act not being undue influence (*In re McDevitt,* 95 Cal. 33, [30 Pac. 101]), such proof exists where the evidence is of such a nature as to warrant the inference that the will was the direct result of the influence exerted for the purpose of procuring it, and was not the natural result of the uncontrolled will of the testatrix. (See *Estate of Arnold,* 147 Cal. 589, [82 Pac. 252]; *Estate of Welch,* 6 Cal. App. 50, [91 Pac. 336].)

It is suggested by appellants that on the motion for a new trial the court erroneously adopted the view that the verdict of the jury was conclusive and that it could not draw any inferences from the evidence contrary to the inferences drawn by the jury. There is absolutely nothing in the record warranting any such claim on the part of appellants.

2. It is urged that evidence was received in violation of the rule contended for by appellants that, "where the issue before the court is that of undue influence, the declarations of the decedent are inadmissible to show her testamentary intention,

or undue influence, and this is true, whether the declarations be made before or after the making of the will." The rule in this state in regard to the admissibility of such declarations, when not so made as to constitute a part of the *res gestæ*, is clearly established by the decisions. They are not admissible in proof or disproof of any statement of fact contained in them, or for the purpose of showing the exercise of undue influence. But wherever the condition or state of mind of the declarant is a material matter, declarations of the testator legitimately tending to shed light on that question are admissible solely for that purpose, that is for the purpose of showing his then condition or state of mind, the effect being, as was said in *Estate of Arnold,* 147 Cal. 594, [92 Pac. 256], "carefully limited to the question of his condition of mind." The most common case in which such declarations are admissible is, of course, the case where the question is as to the mental capacity of the testator to make a will. But the authorities recognize that, as is obvious, the condition or state of mind of the testator at times preceding the execution of the will is a material matter where the issue is undue influence, not for the purpose of showing the exercise of undue influence by another, which cannot be so shown, but for the purpose of showing the effect of undue influence proved by other evidence. As is said in the case last cited, there is a distinction between the effect of such declarations to prove the undue influence and fraud, and their effect to prove the state of mind of the testator. What was said in *Estate of Arnold,* 147 Cal. 594, [82 Pac. 256], was said with reference to the issue of undue influence, and in the later case of *Estate of Thomas,* 155 Cal. 488, [101 Pac. 798], it was said that in cases involving the question of the testator's sanity or the issue of undue influence the underlying principle was the same with respect to such declarations, the declarations being admitted not in proof or disproof of any statement of fact contained in them, but as tending to show the condition or state of mind of the declarant, this condition or state of mind having a direct and important bearing upon the disputed question of his mental capacity or the execution of the will under undue influence. The principal evidence objected to by appellant in this connection was that given by Norman P. Snowball as to a conversation between himself and deceased

some ten months prior to the execution of the will with rela-
tion to her then testamentary intention.    In this conversation
she stated to him that she wished to make her will, that she
thought she would leave Havey (Henry H.) three thousand
dollars or four thousand dollars, the children about one
thousand dollars apiece, and the ranch to "you boys," and that
"Leutie" already had enough.    The court admitted this evi-
dence solely for the purpose of showing the state of mind, the
condition of mind, the friendly or unfriendly relations, the
affection or non-affection.    In its instructions to the jury, the
court, at the request of appellants, again limited the effect of
this testimony by declaring to them substantially that evi-
dence of declarations made by Lucy A. Snowball was admitted
for the sole purpose of showing the friendliness or unfriendli-
ness existing between the said Lucy A. Snowball and the dif-
ferent children, and for the purpose of showing the state of
mind of the said Lucy A. Snowball and the mental attitude of
the said Lucy A. Snowball towards the various objects of her
bounty and could be considered by them only for that pur-
pose.    We are of the opinion that the evidence of these dec-
larations as to the then intentions of the testatrix was ad-
missible as bearing upon the material question of her then
state of mind with relation to her various children, and par-
ticularly towards contestant Henry H. Snowball, and that its
effect was limited by the instructions to the purposes for
which it could legitimately be considered.

Other evidence complained of by appellants in this connec-
tion was that of Norman P. Snowball relative to a conversa-
tion between testatrix, Leutie, Leon, and the witness a few
months before the execution of the will, but this evidence was
clearly admissible as tending to show a then effort on the
part of Leutie and Leon to procure the execution of the will
by the testatrix and to prejudice her against H. H. Snowball
to an extent sufficient to obtain his practical exclusion there-
from as a beneficiary.

3. Under the general statement that evidence tending to
show personal differences existing between proponents and con-
testants, or either of them, and their mother, was inadmissible,.
appellants note certain exceptions to rulings admitting evi-
dence.    So far as any such evidence tended simply to show
the state of mind of the testatrix with relation to her children

at times not too remote from the date of the execution of the will, it was, as we have seen, admissible, as would be any evidence legitimately bearing on that question. The first four exceptions referred to in this connection relate to evidence that was clearly admissible for the purpose of showing the manner in which the undue influence was exercised, the extent to which it was exercised, and the effect thereof, being evidence as to declarations and conduct of Leutie to and in the presence of her mother, regarding and derogatory to H. H. Snowball and indicating most plainly her desire and determination that H. H. Snowball should receive nothing from testatrix, and also tending to show that the testatrix was not able to resist the importunities of Leutie. The matter covered by exception 55, being evidence adduced on the cross-examination of proponents' witness Dickson as to a statement made by Leutie regarding H. H. Snowball in the absence of testatrix, was legitimate cross-examination in view of the evidence of the witness on direct examination to the effect that he had never heard Leutie say anything to indicate that she wished to poison her mother's mind against H. H. Snowball. Exception 41½ amounts to nothing as the question objected to was not answered. The same is true of exception 31. The evidence given under the ruling referred to by exception 37 is unimportant.

4. It is earnestly contended that testimony given by H. H. Snowball as to certain statements made by testatrix to him in the presence of Leutie was inadmissible for any purpose. He testified that immediately after his mother's arm had been fractured he went into the room where his mother was, and Leutie was on the lounge crying, and his mother said to him: "Havey, see what you have done; you brought a dishpan and Leutie pulled me over and broke my arm," and that Leutie did not deny the truth of the statement. He testified further that shortly before this occurrence he went into the kitchen and there found his mother and Leutie, that his mother was crying, and that he asked her what was the matter, that she said that Leutie hit her with the frying-pan and blacked her eye, and that his sister never said a word. Both of the instances referred to were prior to the death of the husband of the testatrix.

It was a theory of contestants that prior to the death of her

father, Leutie was uniformly cruel and unkind to her mother, and that subsequent to her death, her entire attitude to her mother changed for the purpose of obtaining an influence over her in order that she might use the same to her advantage. There was considerable evidence received to show this change in her attitude, and we do not understand it to be seriously questioned that such evidence was admissible as tending to show an effort on the part of Leutie to obtain an influence over her mother and the manner in which that influence was acquired. Proof of the two incidents referred to by the testimony above stated was in line with this theory. Of course, the declarations of the mother testified to were not competent evidence to prove the incidents, were not evidence of the facts stated therein. They constituted simply narratives of past occurrences and were in no sense a part of the *res gestæ,* but declarations which were made in the presence and hearing of Leutie. It is provided by our law that evidence may be given upon a trial of "an act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto" (Code Civ. Proc., sec. 1870, subd. 3) for the purpose of showing such conduct on the part of the party as will constitute acquiescence in and admission of the truth of the statement. The theory is that a statement so made may be of such a nature and made in such a way as to naturally call for a denial if not true, and that a failure to deny may reasonably be taken as an admission of its truth. In *Tibbet* v. *Sue,* 125 Cal. 546, [58 Pac. 160], this court said, quoting approvingly from Rice on Evidence: "Declarations or statements made in the presence of a party are received in evidence, not as evidence in themselves, but to understand what reply the party to be affected by the statement should make to the same. If he is silent when he ought to have spoken, the presumption of acquiescence arises; in this sense, admissions may be implied from conduct." The evidence here received was admissible as tending to show admissions by Leutie of the truth of the charges made against her by her mother. Whether it did show such admissions was for the jury to determine in view of all the circumstances, but it sufficiently bore on that question to be admissible. In justice to Leutie it may be stated that on the trial she emphatically and positively denied the truth of both of said charges.

Another alleged declaration of the testatrix testified to by H. H. Snowball was one made when she refused to allow him to take a cultivator from the premises for temporary use. According to his evidence he had put it on his wagon, when his mother came out and forbade him taking it. He took it off the wagon, and then said to her: "My God, mother, why do you treat me this way?" His mother commenced to cry and said: "Havey, I can't help it. Leutie makes me do it." It is this declaration of the mother that is principally objected to, and its importance as tending to show the subordination of the will of the mother to that of Leutie is, of course, apparent. We are of the opinion that there is enough in the record to indicate that this declaration was made in the presence and hearing of Leutie without a denial on her part to warrant it going to the jury as evidence tending to show the then exercise of undue influence over her mother to prevent any favorable consideration by the mother of her son, H. H. Snowball.

5. Complaint is made that the court erred in permitting certain witnesses to state their opinions upon certain matters where opinion evidence was not admissible. Several exceptions are noted by number under this head, but only one is argued. On cross-examination by appellants of N. P. Snowball, who had testified that his mother was to a certain extent weak mentally, he was asked to what extent she was weak mentally, in other words, what he meant by saying that she was weak mentally to a certain extent, and answered that she was "easily influenced." A motion to strike this answer out as "not responsive" and as the "volunteered opinion of the witness" was denied. We are satisfied that it must be held that the answer was responsive to appellants' own question, and that they had no right to have it stricken out. We quite agree with appellants' counsel that questions addressed to witnesses as to whether a person was one "easily influenced" call for mere opinions and conclusions from facts, as was held in *Compher* v. *Browning*, 219 Ill. 429, [109 Am. St. Rep. 346, 76 N. E. 684]. Assuming for the purposes of argument that such evidence may be given by an "intimate acquaintance" under subdivision 10 of section 1870 of the Code of Civil Procedure, the sustaining of the objection to the question asked appellants' witness Dickson, "Could Lucy A. Snow-

ball be easily influenced," was not prejudicial in view of his other testimony to the effect that he never saw anything to indicate a mental weakness on her part, but rather the reverse, and that she was an exceptionally clear-headed and strong-minded woman.

6. It is claimed that declarations and admissions of Leutie in the absence of others beneficially interested in the will were allowed to be shown, contrary to the doctrine declared in *Estate of Dolbeer*, 149 Cal. 245, [86 Pac. 695], to the effect that declarations constituting simply admissions of one beneficiary as to the mental capacity of the testatrix are not admissible against the other beneficiaries, and consequently are not admissible at all. It is said that this doctrine is equally applicable where the issue is undue influence. For the purposes of this appeal, this may be conceded. But we cannot see that this rule is important here. Several of the exceptions noted under this contention relate to evidence of declarations and conduct of Leutie in the presence of her mother designed to influence her against H. H. Snowball, in other words, evidence of the actual attempt of Leutie to influence her mother against him. Necessarily such evidence was admissible. The only other exception noted under this head requiring notice relates to the evidence of H. H. Snowball as to the cultivator incident, held admissible as tending to show acquiescence on the part of Leutie in the statement of her mother to the effect that it was because of Leutie's insistence that she refused to treat H. H. Snowball more kindly. This incident occurred some time prior to the execution of the will. Such an admission or acquiescence is not at all within the meaning of the doctrine relied on. It stood upon the same plane as evidence to the effect that Leutie had then said to her mother that she insisted that she should not grant any favors to her son would have rested on, in other words, constituted evidence of the then actual attempt of Leutie, prior to the execution of any will, to influence her mother against the son. If any evidence of an actual attempt to exert undue influence is admissible, it would seem that such evidence must necessarily be competent. So, also, the evidence as to the broken arm and frying-pan incidents heretofore referred to, not noted by appellants under this contention, constituted evidence of the then course of treatment by Leutie of her mother.

7. Evidence tending to show false representations made by Leutie to her mother as to the amount of property received by H. H. Snowball from his father for the purpose of influencing her to practically exclude him from her will was clearly within the issues, and, so far as we can see, this is the nature of all the evidence specified in the exceptions noted under the contention that evidence of the financial standing of any of the beneficiaries was inadmissible except the evidence as to the value of the estate of testatrix. While an unjust will does not of itself raise the presumption of undue influence, the nature of the will may be considered by the jury upon the issue of undue influence as a circumstance, and the value of the estate left by the testatrix is necessarily a factor in determining its nature. (See Page on Wills, secs. 426 and 427.) The trial court nowhere refused to allow appellants to show that the representations as to what H. H. Snowball received from his father were true, and it was expressly stated by counsel for respondents that they would not object to evidence as to the property left by his father to the children of H. H. Snowball if the same was offered for the purpose of showing that this was the reason testatrix did not give him more by her will.

8. While we agree with counsel for appellants that "evidence which was immaterial, irrelevant, or incompetent for any purpose, should not have been admitted," we do not find in any of the instances specified under this head any violation of this rule.

9. The refusal to allow proponents' witness Mrs. Carl to testify as to statements made to her by Norman P. Snowball concerning declarations by his mother inconsistent with his testimony as to the nature of such declarations was proper, in view of the objection that no foundation had been laid for any such evidence. As heretofore stated, the question asked proponents' witness Dickson on cross-examination as to statements of Leutie regarding H. H. Snowball was proper cross-examination. We are of the opinion that the same is true as to the questions asked Leutie on cross-examination as to what property she received from her father's estate.

10. We find no prejudicial error in the matter of instructions to the jury.

The matter stricken out of appellants' requested instruc-

tion 10 was covered, as far as was necessary and proper, by appellants' requested instruction 9, which was given.

Appellants' requested instruction 17 was properly refused. In its statement of alleged false representations upon which contestants relied as showing that the execution of the will was obtained by fraud and undue influence it would have been misleading and confusing, in that it was not a fair and complete statement of the false representations asserted by contestants and upon which they relied.

We cannot assume that proponents were prejudiced by the instruction that if deceased had died without a will, her estate would descend to her children, share and share alike. The jury were clearly and emphatically instructed, over and over again, to the effect that the will could not be set aside on the ground that it was not in accord with the law of succession or unjust or capricious.

Contestants' instruction 3, to the effect that while an unjust will does not of itself raise a presumption of undue influence, still the nature of the will may be considered by the jury as a circumstance in determining whether fraud or undue influence was exercised, was correct. *In re Langford,* 108 Cal. 624, [41 Pac. 701], cited by appellants, so intimates.

The point as to contestants' instructions 4, 11, 15, and 23 appears to be, not that they do not correctly state the law, but that they were not applicable under the facts of this case. We see no force in this contention. Contestants' requested instruction 6 was perhaps not pertinent under the facts, but clearly it was not prejudicial.

Contestants' instructions 7 and 8 were absolutely correct statements of law. They did not mean and could not reasonably be taken as meaning that certain evidence received for a limited purpose and confined to that purpose by other instructions could be considered by the jury for another purpose.

While it is said in appellants' brief that contestants' instruction 14 had no application to the facts, it is not claimed that it was in any way prejudicial, and we cannot see that it may have been so.

We see no prejudicial error in the giving of contestants' instructions 17, 19, 20, 21, and 22.

The modification of proponents' requested instruction 18

was proper, for the reason that the portion stricken out, a recital that certain specified evidence had been offered for a certain purpose, was not true. No such evidence had been offered for any such purpose. The instruction as modified fully covered the law applicable to the point that appellant desired to present.

There is no other point presented by the briefs that we consider it necessary to discuss. We deem it proper to say that we would have felt warranted in disregarding numerous exceptions presented in the briefs solely by number of exception and folio of the record, without any statement as to the specific nature of the ruling complained of and without any argument whatever in support of the exception. We have, however, carefully read the whole record in this case, with the result that we have found no substantial error in the rulings of the trial court.

The order denying a new trial is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.