SOLEDAD MORALES, ETC., Plaintiff and Appellee, v. ANACLETO CEIDE, Defendant and Appellant; ELEUTERIO LOPERENA, Defendant.

No. 6954. Argued January 26, 1937.—Decided February 24, 1937.

26

*Arturo Reichard del Valle* and *Rafael O. Fernández* for appellant.
*García Méndez & García Méndez* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

It is alleged by the plaintiff that she is the owner and holder of a piece of rural property measuring 11.74 acres bought by her and her husband Mónico Acevedo; that according to deed No. 122, dated August 29, 1929, the plaintiff and her husband appear as selling the said piece of property to defendant Eleuterio Loperena for $1,400, received prior to the execution of the deed, but that there was no actual delivery of money, Loperena promising to reconvey the property to the plaintiff and to her husband upon the death of either of them; that defendant Loperena, taking advantage of his close friendship with the Acevedo spouses and of their old age and ignorance, induced them to believe that Aniceto Ceide, the other defendant, intended to dispossess them of their property by judicial proceedings and that the only way to prevent it was by conveying the title to Loperena who later on would reconvey the same to the surviving spouse; that the false and fraudulent representations of Loperena were made by him in collusion with the defendant Aniceto Ceide; that four days after the execution of the deed, Mónico Acevedo, on being warned regarding the risk incurred by reason of what he and his wife had done, requested Loperena to reconvey the property to him, but that Loperena refused to do so, offering instead a counter-deed wherein he promised to return the property in case of death of either of the spouses; that on September 5, 1929, Loperena mortgaged the property to secure a mortgage note for $1,700 payable to bearer; that on the death of Loperena's wife the property was awarded to him as property brought by him into the conjugal partnership; that on the death of Mónico Acevedo the plaintiff became the exclusive owner of the property; that with the deliberate purpose of defrauding the plaintiff, Loperena indorsed the said mortgage note to Ceide, and that Ceide, with knowledge of the falsity of the deed of sale from Acevedo to Loperena, of the existence of the counter-deed executed by Loperena, and of the falsity of the mortgage note,

is seeking to collect said note under threat of judicial action against the plaintiff to evict her from the property; that on the death of her husband the plaintiff requested Loperena to reconvey to her the said property and that the said Loperena answered evasively and concealed from the plaintiff his dealings with the property which have been discovered by her attorney; that the property is worth $4,000 and that the plaintiff suffered damages in the sum of $1,000 by reason of the acts of the defendants. The plaintiff prays for a judgment declaring her to be the sole and lawful owner of the immovable; that the deeds, the promissory note, and other proceedings of the defendants are void and of no legal force, or effect; and adjudging the defendants to pay to her $1,000 as damages, together with costs, expenses, and attorney's fees.

After the demurrers interposed by each defendant had been overruled, the defendant Loperena filed a written statement waiving his defense. The defendant Ceide answered the complaint and, after alleging that the same did not state facts sufficient to constitute a cause of action and denying all the essential averments thereof, he set up the following special defenses:

"1. That the plaintiff, her husband, and Loperena conspired to defraud defendant Ceide and to prevent him from recovering the sum of $943.58 which Mónico Acevedo owed to him.

"2. That the plaintiff is in possession of the property the object of this suit, not as owner thereof, but as the tenant of Eleuterio Loperena.

"3. That on December 31, 1929, Acevedo was indebted to the defendant Ceide in the sum of $981.32; that in August of the same year Ceide demanded from Acevedo security for this debt which then amounted to $945.58, and the debtor promised to furnish the same; that in the following month of September, Ceide on learning that Acevedo and his wife, with intent to defraud him of the amount of his claim, had conveyed the property to Loperena without consideration, placed the matter before the then District Attorney of Aguadilla, Mr. Flores, who asked the defendant to submit

several affidavits, which he did; that on December 31, 1929, Mónico Acevedo promised Ceide that he would secure the debt and pay the same to him if he reduced the amount thereof and that after discussing the matter they reached an agreement whereby Ceide reduced his claim to $481.32 and in addition delivered to Mónico Acevedo in cash the sum of $1,218.68, making a total of $1,700, in consideration of which Mónico Acevedo indorsed and delivered to him the promissory note executed and delivered by Eleuterio Loperena and secured by a mortgage on the property which the plaintiff claims to belong to her; that when said promissory note became due Ceide requested Loperena to pay the same but that Loperena conspired with the plaintiff, Soledad Morales, to defraud Ceide and to prevent the collection of the obligation and caused Soledad Morales to join him as defendant in the present action, wherein he denied the charge of fraud made against him in the complaint, notwithstanding his having participated in all the transactions carried out with regard to the property, including the mortgage executed by him, Loperena, in favor of Alberto Esteves for the sum of $1,000.''

The lower court rendered judgment for the plaintiff as to the alleged nullity but denied the claim for damages because no evidence had been submitted to prove the same. The defendant Ceide appealed. He assigns the commission of seventeen errors by the lower court. The first two assignments relate to the admission of certain evidence. The remaining fifteen refer to the alleged insufficiency of the evidence, to the weighing thereof by the court, and to the credibility of the witnesses. Assignments 1 and 2 read as follows:

''1. The district court committed manifest error and acted with partiality in admitting in evidence against defendant Aniceto Ceide certain declarations of Mónico Acevedo, deceased, and in refusing the admission of other declarations of the same decedent in favor of said defendant.

''2. The district court committed manifest error in admitting in evidence against Aniceto Ceide certain alleged statements and papers of defendant Eleuterio Loperena.''

The first assignment is predicated on the following incidents:

Francisco Varela, a witness for the plaintiff, testified that the last time he called at the house of the defendant

Ceide was in September 1928; that he went there to take some yams to Don Aniceto and was accompanied by Mónico Acevedo. Answering the questions as to what took place there, he stated:

"Yes, sir. the yams weighed ten hundredweight which Don Aniceto bought from him for $15 at $1.50 per hundredweight, and then Don Mónico said to Don Aniceto . . ."

Counsel for defendant objected on the ground that it was improper to introduce, through the testimony of a witness, declarations or statements made by a deceased person. The court allowed the question, the defendant took an exception, and the witness continued to testify as follows:

"On this last call of Don Mónico and myself he asked Don Aniceto to let him have some money, and then Don Aniceto said that he owed money to Don Aniceto rather than Don Aniceto to him, that the sum was small but it was due, and they had an argument, Don Mónico then leaving and I also left. All he said was that it was unbelievable that Don Aniceto should tell him that he owed him nothing; that he had some money there and he left in a rage."

Counsel for the defendant moved to strike out from the testimony of Varela *"all statements regarding the conversation between Acevedo and Ceide that took place about 1928, as the same were inadmissible."* The motion was denied and the defendant took an exception. In support of his contention he now cites subdivision 4 of section 397 of the Code of Civil Procedure (1933 ed.), and several decisions of this court which we think are not applicable to the question under consideration. It is our opinion that no error was committed in admitting the testimony of Varela in regard to the statements made by the decedent Acevedo. The statements in question, made in the presence of defendant Ceide, were admissible under subdivision 3 of the aforesaid section 397, which provides as follows:

"Sec. 397.—In conformity with the preceding provisions, evidence of the following facts may be given upon a trial:

"1. * * * * * * *

"2. * * * * * * *

"3. An act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto."

See *Estate of Snowball,* 157 Cal. 301; *Tibbet* v. *Sue,* 125 Cal. 544.

 While the defendant Ceide was testifying in regard to the statements made to him by Acevedo and the acts done by the latter, counsel for the plaintiff moved to strike out all that part of the testimony relating to the acts and declarations of Mónico Acevedo, as the latter had died. The court ordered that the declarations of the decedent be stricken out but refused to strike out the statements regarding the acts of the decedent. Counsel for the plaintiff took an exception. According to the transcript of the evidence, the following incident then occurred:

"The attorney for the defendants proceeded with his examination of the witness.

"Q. Mr. Ceide: You must refrain from referring to anything that Mónico Acevedo may have told you. Was Mónico Acevedo in your establishment on that day?

"A. Yes, sir."

Not only does the record fail to show that the attorney for the plaintiff took an exception, which would be sufficient justification for our overruling this assignment, but it appears therefrom that the attorney for the defendant did not object to the order to strike out by instructing his client not to refer to any declarations that the decedent might have made to him. It was not error for the court to strike out the alleged declarations of the decedent, as they were inadmissible. *Wilcox* v. *Axtmayer et al.,* 23 P.R.R. 319.

██ We will now examine the second assignment of error.

After the plaintiff had testified that it was Loperena, one of the defendants, who advised her and her husband to con-

vey the property to him, her attorney asked her the following question:

"Q. Why did he advise you to do so?
"A. Because Don Tello (Loperena) said that Ceide intended to take the property from us."

The attorney for the defendant Ceide objected, but the court allowed the question because in its opinion *"this is the explanation and the reason for the execution of this contract and it becomes necessary for the court to familiarize itself with and to go into every question leading to a just decision of this case."* The attorney for the defendant took an exception.

We think that the question was relevant and admissible. The alleged nullity of the deed whereby the Acevedo spouses conveyed the property to Loperena, is based on the assertion made in the complaint that Loperena induced the plaintiff and her husband to convey the property to him, on the pretense that Aniceto Ceide was to dispossess them by judicial proceedings. The interrogatory under discussion tended to show, not the existence of a conspiracy between Ceide and Loperena, but simply the representations made by the latter in order to induce the owners of the property to convey the same to him. There was no error in the ruling of the court on this point.

█ When the witness Luis A. Rosario, a notary public, was questioned by the attorney for the plaintiff in regard to declarations made in his presence by the defendant Loperena, counsel for the defendant Ceide objected on the ground that at the time Loperena made the declarations in question defendant Ceide was not present. The court permitted the question, the defendant took an exception, and the witness testified thus:

"A.— . . . . Mr. Loperena proceeded to explain to me that what he wanted to state was that a piece of property that Mr. Mónico Acevedo had conveyed to him belonged in fact to Mr. Mónico and his wife although the title was in his name, and that the convey-

ance was executed because Mr. Loperena was a close friend of the family and a competent farmer and that Mónico and his wife could derive greater profits out of the property, but that he had no interest in the property and that he was ready to convey the same to them when requested by them.

"Q.—Did he state then that there was no price or consideration involved in that deal?

"A.—Well, he told me what I have already stated; that it had been conveyed to him simply for him to manage it only, but he acknowledged then and there that the title, notwithstanding its transfer to him by public deed, was vested in Mónico and his wife, that is to say, that the property belonged to Mónico and his wife."

The presence of defendant Ceide was unnecessary in order to render the aforesaid declarations of Loperena admissible in evidence to show the nullity of the conveyance for want of consideration. The declarations transcribed do not refer at all to Ceide, do not tend to show the alleged conspiracy, and are not at all prejudicial to him. Loperena was one of the defendants in the instant case and the admissions made by him as against his own interest may be accepted as evidence in support of the cause of action alleged against him. The circumstance that such declarations might affect in some way the cause of action as regards the other defendant does not render them inadmissible. We think that the court did not err either in admitting them or in refusing to strike them out.

All the remaining errors assigned refer, as we have already said, to the weighing of the evidence by the trial court and to the credence accorded by it to the testimony of the witnesses for the plaintiff.

Both the theory of the plaintiff and that of the defendant rest on the alleged conspiracy between one of the parties and Eleuterio Loperena to defraud the other. The plaintiff charges the defendant Ceide with having entered into a conspiracy with Loperena whereby the latter induced plaintiff and her husband to transfer the property to him, and then mortgaged said property and delivered the promissory note

to Ceide. The latter sets up as a defense that the deed of sale from the Acevedo spouses to Loperena was executed pursuant to a combination formed by the parties thereto for the purpose of defrauding him. Both theories are in accord that deed No. 122 of August 29, 1929, is void because no price or consideration whatever had passed at its execution. The evidence of both sides shows beyond doubt that Eleuterio Loperena did not pay any money to the Acevedo spouses for the conveyance to him of the property; and that defendant Ceide had knowledge of the existence of such ground for nullity long before the promissory note was delivered to him, either by Mónico Acevedo in settlement of his debt and as a consideration for an additional sum, or by Loperena as a part of the plan to defraud Acevedo. We have carefully examined all the evidence in the case and do not consider the same as sufficient to prove either of the two alleged conspiracies. Really there is no evidence to show that either at the time of the execution of the deed or when making the representations that preceded such execution, Loperena acted on a concerted plan between him and Ceide to defraud Acevedo; nor is there any evidence to establish the fact that the latter conspired with Loperena to defraud Ceide.

The defendant Ceide alleges that, although the conveyance of the property should be void for want of consideration and for having been executed pursuant to fraudulent representations made by Loperena, the mortgage contract and the mortgage note have been validated by the acceptance of the said note by Mónico Acevedo and its delivery by the latter to Ceide, as alleged by the latter, in settlement of an obligation and for the payment of the additional sum of $1,218.68. The lower court, after carefully weighing the evidence regarding the alleged transaction between Mónico Acevedo and Aniceto Ceide, gave no credence to the evidence introduced by Ceide and found that Ceide received the promissory note from Loperena and not from Mónico Acevedo.

The nullity of the conveyance from Acevedo and his wife to Loperena having been admitted, and conceding therefore that these spouses continued to be the sole and real owners of the property, if we consider as established the facts that Loperena, with the consent of Mónico Acevedo, mortgaged the property and delivered the mortgage note to Mónico Acevedo, which note the latter delivered to the defendant Ceide in satisfaction of a debt, would those facts be sufficient in law to validate the deed of sale and to render the mortgage and the promissory note as binding on the wife, plaintiff herein, who never gave her consent to said validation?

In deciding this question the lower court expressed itself as follows:

"Although the court, in view of the foregoing considerations, is of the opinion that judgment should be rendered in favor of the plaintiff, it does not wish to close this opinion without stating the effect which, the alleged transaction entered into between Mónico Acevedo and Ceide on December 31, 1929, might have been had, if it were valid. The court does not believe that such transaction took place, but it wants further to state that Mónico Acevedo had no authority to bind his wife Soledad Morales by the alleged deed of December 31, 1929. Section 159 of the Civil Code provides as follows:

" 'Sec. 159. The husband shall be the administrator of the conjugal property, except when stipulated otherwise.

" ' * * * * * * *

" 'Nevertheless the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null, except when effected with the mutual consent of both parties to the marriage.'

"Section 1327 of the Civil Code again provides 'that the husband is the administrator of the conjugal partnership,' with the exceptions therein established. And section 1328 provides that 'notwithstanding the power which the husband has as administrator he shall not have the power to give, to sell and to bind for a consideration the real estate of the conjugal partnership, without the express consent of the wife. Every sale or agreement which the husband may make in respect to the said property in violation of this section and the other provisions of this Code, or in fraud of the wife shall be null and shall not prejudice her or her heirs.'

"Therefore, the law forbids any transaction by the husband involving the alienation or burdening of community property without the express consent of the wife. It does not at all appear that Mrs. Soledad Morales participated in the alleged transaction nor that she consented to the execution by Loperena, in her absence and relying on a fictitious title, of the mortgage deed and note. The court is of the opinion that even conceding that the transaction between Mónico Acevedo and Aniceto Ceide was effected on December 31, 1929, and that such transaction might have validated the mortgage deed and the simulated sale, the express consent of Doña Soledad was required in order to effect such validation. The evidence indicates that there was no intervention whatever on the part of Doña Soledad in the alleged transaction."

We agree with the reasoning of the trial court. The defendant and appellant can not claim the status of a third person as regards the acceptance of the mortgage note from Acevedo or Loperena, since according to his own testimony at the trial he had knowledge back in September 1929, that the conveyance to Loperena was void; and the acceptance of the promissory note did not take place until December of the same year. If Ceide received the promissory note in such circumstances, without there being any evidence to show notice or consent on the part of the plaintiff, the latter is not bound by the act of her husband.

For the reasons stated the judgment appealed from must be and it is hereby affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.