[Civ. No. 14056. First Dist., Div. Two. Sept. 19, 1949.]

Estate of MARY ELIZABETH MERRICK, Deceased. JAMES A. MERRICK et al., Appellants, v. JOHN P. MERRICK et al., Respondents.

Clarence E. Rust for Appellants.

Samuel L. Gold and Augustin Donovan for Respondents.

RUNNELLS, J. pro tem.—Four of the heirs of Mary Elizabeth Merrick, deceased, contested her will before probate and now appeal from a judgment and order admitting the will to probate. The said heirs are children of the deceased, and will be referred to as the contestants. The respondents are also children and heirs of the deceased and will be referred to as the proponents. On June 12, 1947, proponent John P. Merrick filed in the court below his petition for probate of the will of deceased in which it was alleged, among other things, that Mary Elizabeth Merrick died on May 5, 1947, in Alameda County leaving an estate of an estimated value of more than $10,000; that the heirs consisted of the contestants and proponents and in addition thereto two grandchildren. A copy of the will was attached to the petition. In the will there was devised to said John P. Merrick the family home and the residue went in one-sevenths to each of the six children and one-seventh divided equally between the two grandchildren.

Contest to the will before probate was filed on July 8, 1947, by three sons and a daughter of decedent, wherein it was alleged that at the time of the execution of the will decedent was wanting in testamentary capacity by reason of unsoundness of mind and that said will was obtained from the decedent through undue influence.

The contest was tried by the court without a jury and the court found in favor of the proponents on all issues presented and made its judgment and order admitting the will to probate.

The only specification of error which the appellants have raised on appeal is: ''There is no evidence to support the finding that the Will was executed free from the undue influence of proponent or to overcome the presumption of undue influence or to establish that said Will was the free and voluntary act of testatrix.''

The evidence discloses that the testatrix suffered a paralytic stroke in 1944; also a broken hip in 1944 and about six months later the other hip was broken; pins were placed in both hips; that a second stroke was suffered on April 23, 1947; that John P. Merrick had spent practically all his life at his mother's home; that during the last years of her life he slept on a couch in her room, cared for her and administered to her comfort

and needs and performed the most menial tasks; that she had indicated on more than one occasion that she wanted him to have the home; that he paid the housekeeper and operating expenses of the home; that the testatrix paid medical and hospital bills out of her own funds; and that upon ascertaining that his mother had suffered a stroke on April 23, 1947, he immediately notified the other children.

The testimony of contestants of the occurrences from April 23 to the date of death of testatrix varied only in minor details; substantially their testimony so far as is here pertinent was to the effect that their mother was in a state of coma; was unconscious; was unable to move; was unable to speak; was unable to eat and was in such a state as to be unable to recognize any of them; that they had no knowledge of the execution of the will until after their mother's death, although they, or at least some of them, were in a downstairs room in the home at the time of the execution of the will. The testimony of the proponents was to the effect that the testatrix told them on the afternoon of April 24, 1947, that she desired to make her will; that she wanted Jack (John P. Merrick) to have the home and the remainder to go to her children in one-sevenths and one-seventh in equal shares to her two grandchildren, children of a deceased daughter; that she wanted Mrs. Christiansen and Mr. Roach as witnesses; that while their mother was directing how she desired to leave her property, Belle Merrick Stuart made notes thereof; that the will was put in typewritten form and was shortly thereafter signed by mark by their mother in the presence of Mrs. Christiansen and Mr. Roach.

The testimony of the subscribing witnesses, Mrs. Christiansen and Mr. Roach, was to the effect that John P. Merrick read the will to his mother; that she stated it was what she wanted; that she thereupon signed by mark and asked them to witness the will which they did. Both subscribing witnesses testified that the testatrix was able to talk and appeared to understand what she was doing.

Mrs. Frates arrived at the home the morning of April 25, 1947, and remained until May 4th and was in attendance as nurse for deceased from 9 to 5 each day. She testified that until the last two or three days of her stay the deceased was able to and did talk to her and to members of the family, was able to eat and to recognize those about her.

Gus Campbell, who had known deceased since September, 1945, and who had seen her about once a week since that date.

testified he had seen decedent in her bedroom on April 25, 26, and 27; that deceased had talked to him and that she was not in a coma or unconscious condition.

It is contestants' view in the light of the testimony taken at the trial that, inasmuch as John P. Merrick was the principal beneficiary under the will and that he not only sustained a confidential relation to the testatrix at the time of the execution of the will but actively participated in its preparation, he carried the burden to show the will was not procured or induced by undue influence. With this contention we are in agreement. (*Estate of Graves*, 202 Cal. 258, 262 [259 P. 935]; *Estate of Baird*, 176 Cal. 381, 384 [168 P. 561]; *Estate of Higgins*, 156 Cal. 257, 261 [104 P. 6]; *In re McDevitt*, 95 Cal. 17, 33 [30 P. 101].)

The presumption of undue influence may be overcome by other circumstances which show affirmatively that the decedent's volition accompanied the testamentary act. The *indicia* of undue influence may be explained and rebutted by the testimony of persons who were present at the time the instrument was executed, by proof that the decedent gave instructions for the preparation of the script, and by evidence showing that he subsequently affirmed or expressed approval of its provisions (26 Cal.Jur. 649 and cases cited).

The evidence shows that the presumption of undue influence was squarely met and overthrown. The testatrix, according to the testimony of John P. Merrick, stated that she wanted to make a will and, "I want you (Jack) to have everything." Jack protested and said he did not want everything, "I don't want any trouble." Then she said, "You have always been good to me, and they all know I want you to have this house. This has always been your home, and I want it as your home." Belle Merrick Stuart testified in effect in confirmation of the same thing. Mrs. Christiansen also testified that during a conversation with testatrix in the early part of April, 1947, the testatrix stated: ". . . when she went she wanted the house left to Jack."

Thus the record shows that the testatrix had, prior to the execution of the will, evidenced a desire to favor John P. Merrick (Jack) in appreciation of his filial affection. The record is completely silent of any domination over the testatrix by John P. Merrick or in fact any person concerning the disposition of her property. In view of his long attendance upon his mother, her will was a completely natural one.

Evidence was produced to the satisfaction of the pro-

bate court that there was no pressure brought to bear directly upon the testatrix in making disposition of her property in the manner so desired by her. Indeed, the testimony was to the contrary in that it definitely showed that the disposition of her property was the natural result of her uncontrolled act and will. In *Estate of Snowball,* 157 Cal. 301, 305 [107 P. 598], it was held: "All questions of the credibility of witnesses and of the weight to be given to their testimony were exclusively for the jury and the trial judge. The rule is the same in will contests as in other proceedings, and a verdict or finding in such a case will not be disturbed 'where there is a real and substantial conflict of evidence on the issue of fact involved.' (*Estate of Doolittle,* 153 Cal. [29], 30 [94 P. 240].)" In *Estate of Janvier,* 7 Cal.App.2d 624, 625 [46 P.2d 792], which involved a contest to the probate of two codicils to the will of the decedent upon the ground of alleged undue influence and in which appellants relied upon the presumption of undue influence under circumstances similar to the instant case, the court disposes of the matter in these words: "It is the first contention of the plaintiffs that the presumption of undue influence was not overcome by the evidence of the defendants. It is sufficient for us to say that there was substantial evidence to overcome the presumption, and the jury resolved the question in favor of the defendants by a special verdict which this court would not be justified in upsetting on appeal."

The testimony of the subscribing witnesses and the nurse, coupled with that of the proponents, apparently had great weight with the trial court for that court found as a fact "That it is not true that on the 24th day of April, 1947, John P. Merrick then and there persuaded or induced the said deceased to make her mark, and thereby attempt to influence the execution of the said Will offered for probate in these proceedings." And ". . . it is not true that the making of said Will was procured through undue influence practiced by John P. Merrick."

Under the circumstances, it is concluded that the issue of undue influence was correctly determined by the lower court.

For the reasons given, the judgment and order are affirmed.

Goodell, Acting P. J., and Dooling, J., concurred.