[Civ. No. 4246.   Second Appellate District, Division One.—December 11, 1923.]

In the Matter of the Estate of MARY D. LITTLE, Deceased. SAMUEL M. LITTLE et al., Respondents, v. ANNA F. CURSON, Executrix, etc., Appellant.

[1] WILLS—CONTEST—UNDUE INFLUENCE—ISSUES—INSTRUCTIONS.—In a will contest, where there is no direct allegation in the petition charging undue influence by a given attorney, yet there are facts and circumstances set out in said petition which, if true, would be tantamount to a direct allegation of undue influence on the part of said attorney, and such allegations are so considered by the executrix and are specifically denied by her in her answer, and the case is tried upon the theory that undue influence was exerted over said decedent by said attorney, it is not error to submit to the jury specific questions as to whether the will and codicil were procured through the undue influence of said attorney, or to instruct the jury as to the law if they should find the will or codicil were so procured.

[2] ID.—ISSUES—FRAUD—FINDINGS.—In such a contest, where the will and codicil are found to have been procured through undue influence, the failure of the jury to find upon the issue of fraud is not prejudicial to the rights of the proponent.

[3] ID.—UNDUE INFLUENCE—EVIDENCE.—In this will contest, the evidence as to the age and inexperience of the testatrix at the time she was left with considerable property by the death of her husband, together with the evidence showing the relation of proponent and the testatrix and the latter's dependence upon proponent and the attorney who drew the will and codicil for advice and instruction as to the management and disposition of her property, and the evidence as to the circumstances surrounding the drawing up of the will and, thereafter, of the codicil, was sufficient to justify the finding that such instruments were procured through undue influence.

[4] ID.—SUFFICIENCY OF VERDICT—APPEAL—WAIVER OF OBJECTIONS.—In a will contest, a verdict in favor of contestants, based upon the affirmative finding of the jury in response to the questions as to whether the will and the codicil were procured through the undue influence of four named persons "or any or either of them," without designating the particular person who exercised the undue influence, meets the requirements of section 1314 of the Civil Code;

but even though such verdict did not conform to the requirements of the statute, such objection comes too late when made for the first time on appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Randall, Bartlett & White for Appellant.

Clement L. Shinn, John L. Fleming and Percy Hight for Respondents.

CURTIS J.—This is an appeal from a judgment vacating and setting aside an order admitting to probate the will of Mary D. Little, deceased, and from an order denying a new trial, and also from an order refusing to vacate and set aside said judgment.

The contest of said will was instituted by respondents and was based upon fraud, unsoundness of mind, and undue influence of Anna F. Curson, Samuel T. Curson, Albert E. Curson and W. I. Foley. At the conclusion of respondents' testimony and upon their motion the court dismissed the contest as to the issue of unsoundness of mind of decedent.

Mary D. Little died February 3, 1920, at Los Angeles, California. At the time of her death she was, and for many years prior thereto had been, a resident of said city. She left surviving her as her heirs at law the appellant, Anna F. Curson, her daughter; and the respondents, Samuel M. Little, her son; and Victor Thompson, Mary L. Knapp, Ruby Harris, Jane R. Spencer, Adah F. Dolson and Emma J. Held, grandchildren of said deceased and children of her deceased daughter, Mary M. Thompson; also Lewis P. Ferguson, her great-grandson by Mary D. Ferguson, deceased, daughter of Emma J. West, deceased, daughter of said Mary D. Little, deceased; and also a daughter, Lula M. Scott, who was a beneficiary under her mother's will. Neither Lula M. Scott nor Lewis P. Ferguson is a party to this proceeding.

On February 20, 1920, after the death of the said Mary D. Little, there was filed for probate two documents, one bearing date October 30, 1913, and purporting to be her

last will and testament, and the other bearing date November 7, 1918, purporting to be a codicil to said last will and testament. The said Anna F. Curson was named in each of said documents as the executrix thereof, and with said documents filed a petition for the probate of the same as the last will and testament of Mary D. Little, deceased. Upon the hearing of said petition said documents were admitted to probate as the last will and testament of said deceased, and the said Anna F. Curson appointed executrix thereof, and letters testamentary were issued to her. Thereafter, this contest was instituted by respondents, and resulted in a verdict by the jury finding that the purported will and codicil were executed under undue influence. On this verdict the court rendered judgment vacating and setting aside its order previously made, admitting the will to probate, and adjudging said purported will and codicil to be null and void and of no effect. The court did not submit to the jury the issue of fraud.

The deceased, Mary D. Little, was the wife of Samuel W. Little, deceased, who died January 30, 1911, and from whom she received a large amount of property. Prior to his death appellant, Anna F. Curson, had lost her husband, and about the year 1905, with her two sons, Samuel T. and Albert E. Curson, took up her residence at her father's house, and they so lived until the time of her father's death. After his death they continued to live in the family residence with Mrs. Little, the mother of appellant. The sons lived there until their marriage, and the appellant until the date of the death of her mother. Mary D. Little, at the date of her husband's death, was eighty-seven years old, and at the time of the execution of said purported will was eighty-nine years of age, and at the date of the execution of said codicil was of the age of ninety-four years. She was a woman of limited education and at the time of the death of her husband had had practically no business experience. Her daughter, Mrs. Curson, after the death of Samuel W. Little, acted for her mother in practically all business matters. We are not informed as to the terms of the will of Samuel W. Little, deceased, but it appears that there was considerable dissatisfaction with his will on the part of his heirs at law, and particularly on the part of appellant, Anna F. Curson. The evidence shows that when the will was read for the

first time, a few days after the death of Samuel W. Little, Mrs. Curson was greatly disappointed with the manner in which she had been treated in her father's will, and turning to her mother said, "Oh, mother, what am I going to do, who is going to keep me?" To which statement the mother replied, "I will look after you, Annie." Some time thereafter a contest was filed of the will of Samuel W. Little, deceased, the contestants being the said Mary D. Little, his daughter, Anna F. Curson, his son, Samuel M. Little, a daughter, Mary M. Thompson, the mother of the respondents herein with the exception of Samuel M. Little, another daughter, Lula M. Thompson (who later became Lula M. Scott), and said Lewis Ferguson, a grandson. The attorneys for the contestants in this proceeding were Messrs. Henry T. Gage and W. I. Foley, and they were brought to the Little home shortly after the death of Samuel W. Little and introduced to Mrs. Little and Mrs. Curson by the son of the latter, Samuel T. Curson. Mr. Foley had direct charge of this litigation and from the date of his employment, which was prior to April, 1911, until her death he was the legal adviser of Mrs. Little. He was also during this time the attorney of Mrs. Curson. The evidence does not show the exact date of the institution of the contest of the will of Samuel W. Little, deceased, but it was probably in April, 1911. Respondent Samuel M. Little states that he became one of the plaintiffs in the contest of his father's will shortly after the latter's death. In October, 1913, and while this contest of the will of Samuel W. Little, deceased, was pending and two years and a half after its commencement, Mrs. Little and Mrs. Curson, with Samuel T. Curson, and possibly Mary M. Thompson went to the office of W. I. Foley. Mrs. Curson testifies that on this occasion Mr. Foley suggested to Mrs. Little, "Now we will withdraw the contest and you remember the children their father did not remember." On another occasion Mrs. Curson states that Mr. Foley at this time said to Mrs. Little, "You and Mrs. Curson withdraw from the contest and you remember your daughters Mrs. Anna F. Curson and Mrs. Lula M. Thompson, and that will make it equal." Mrs. Curson further testified that the following conversation took place on this occasion: "At the time this will was under discussion in the presence of my mother, I told Mr. Foley

about the long time I had lived with my mother and cared for her. I think Mr. Foley at that time said to my mother, 'Mrs. Little, you ought to remember your daughter, Mrs. Curson, well because she has been faithful to you.' " Following this conversation the decedent and Mr. Foley repaired to the private office of Mr. Foley while Mrs. Curson remained in the reception room. On that day, or very soon thereafter, the will was prepared by Mr. Foley and brought to the home of Mrs. Little, where it was signed by her. Mrs. Curson testified that she saw the will in Mr. Foley's office the day it was signed and also at the residence of Mrs. Little and read it before it was signed. The will was left with Mrs. Little and afterwards taken by Mrs. Curson and placed in a safe deposit box. None of the other heirs knew of the contents of the will. Some time after its execution they learned of its existence and Samuel M. Little requested his mother for permission to read it. She referred him to Mr. Foley who denied his request.

The will provided that after a bequest of $100 each to Samuel M. Little, Mary M. Thompson and Lewis P. Ferguson, an undivided three-fifths of all the rest and residue of the property of said deceased should go to Anna F. Curson, and an undivided two-fifths thereof to Lula M. Thompson. The bequest to Mrs. Lula M. Thompson was for life with the remainder over to her children. It was further set forth in the will that it was the intention of the decedent to provide in part by deeds and conveyances of property to her daughters, Mrs. Curson and Mrs. Lula M. Thompson. Thereafter the decedent executed four deeds as follows: One on November 4, 1913, in favor of Anna F. Curson to the home place on Burlington Avenue, Los Angeles, California, for which the decedent had paid $8,500, and one on September 29, 1914, in favor of Anna F. Curson to property situated in Lincoln, Nebraska, valued at about $75,000; one in June, 1917, in favor of Lula M. Thompson for five-twelfths interest in property situated at the southeast corner of First and Broadway, and five twenty-fourths interest in a lot in Moreno Tract, Los Angeles, California, and one in July, 1917, in favor of Lula M. Thompson to property situated at Brooklyn Heights, Los Angeles, California. Mrs. Curson testified that her mother discussed with Mr. Foley and herself the disposition of her property by means

of deeds at the time they went to Mr. Foley's office on the first occasion when the will was prepared. These deeds were all prepared by Mr. Foley, with one possible exception, which was the deed to the property in Lincoln, Nebraska. This deed was either prepared by Mr. Foley or by an attorney in Lincoln, Nebraska, at the request and under the direction of Mr. Foley. Mrs. Curson further testified as follows: ''After the conversation in Mr. Foley's office, in which it was agreed to withdraw the will contest and make a will and certain deeds, we got the consent of Samuel M. Little and the guardian of Lewis Ferguson to the withdrawal of the will contest. I never told Mary M. Thompson or Samuel M. Little or Lula M. Thompson or the guardian of Lewis Thompson that mother had agreed that when the contest was withdrawn that she would make a will leaving her estate to me and Mrs. Scott, or would deed me her property.''

On November 7, 1918, the codicil to this will was prepared by Mr. Foley and sent to Mrs. Little at her home, where the same was signed by her. Mrs. Curson testified that at the request of her mother she telephoned to Mr. Foley and he came out to the house and Mrs. Little talked with him. Mrs. Curson had informed Mrs. Griffith, one of the subscribing witnesses, that a codicil was to be made, and asked Mrs. Griffith if she would sign as a witness. After the preparation of the codicil, it was brought by Mrs. Curson into the room where the subscribing witnesses and Mrs. Little were. Mr. Richards, the other subscribing witness, then said: ''Now, Mrs. Griffith, we are not supposed to know anything that is in this codicil. We are simply to witness here that Mrs. Little is well and of sound mind.'' The codicil was not read to Mrs. Little nor by her in the presence of either of the subscribing witnesses. There is no evidence that Mrs. Little ever read the codicil or had it read to her before she signed it. By this codicil the decedent increased the bequest of $100 to Samuel M. Little to $500. Mary M. Thompson having died in the meantime, the bequest of $100 to her was revoked, and a bequest of $100 was made to each of the six children of the said Mary M. Thompson, deceased. In her codicil the decedent refers to the four deeds executed by her and requested that the same be respected by her children and grandchildren. The

residue of her estate, in the codicil, was given to Mrs. Curson and to Mrs. Lula M. Thompson in the same proportions specified in the original will. It does not appear what the value of the estate finally left by Mrs. Little was, but in the petition for the probate of the will it is given as $8,000. The value of the three pieces of property conveyed to Mrs. Thompson was approximately $40,000.

We have already referred to the fact that Mary D. Little was at the date of the death of her husband of the age of eighty-seven years and from that time until the date of her death Mrs. Curson resided with her and transacted all her business, and that during this time Mr. Foley was her legal adviser. Mrs. Curson testifies that whenever any question arose of any serious moment, her mother would say, "Let us go and ask Mr. Foley," and that during this time she looked to Mr. Foley for direction in all legal matters concerning her property. The evidence further shows that between the date of the death of Mr. Little and that of the decedent the latter referred almost everything in the nature of business to her daughter, Mrs. Curson. Whenever she was asked by other members of the family anything about her property or her business, she invariably replied, "I don't know, ask Annie" (meaning Mrs. Curson). The evidence also shows that when Mrs. Lula M. Thompson discovered that Mrs. Curson had received deeds to certain property from her mother, she called upon her mother and insisted upon the latter deeding property to her. The mother replied that she would do so, but that she would first have to see Mrs. Curson. Upon seeing Mrs. Curson about the matter, the latter replied, "Sure, you can have it." The result was that Mrs. Little executed in favor of Mrs. Lula M. Thompson the two deeds before referred to. The evidence in the controversy was voluminous, but the above recitals contain, in our opinion, the salient points brought out at the trial.

Appellant advances three reasons why the judgment should be reversed: 1. That the court erred in submitting to the jury the question of the exertion of undue influence upon the decedent by W. I. Foley. 2. That the jury did not find upon the issue of fraud. 3. Insufficiency of the evidence to support the verdict.

At the conclusion of the evidence the court submitted to the jury the following questions: "Was the execution of the will dated October 30, 1913, procured by undue influence of Anna F. Curson, Samuel T. Curson, Albert E. Curson and W. I. Foley, or any or either of them?"

"Was the execution of the codicil dated November 7, 1918, procured by undue influence of Anna F. Curson, Samuel T. Curson, Albert E. Curson and W. I. Foley, or any or either of them?" The answer of the jury to each question was "Yes."

The court also gave to the jury the following instruction: "If you believe from the evidence that the deceased in making her will or codicil was unduly influenced so to do by Anna F. Curson, Samuel T. Curson and W. I. Foley, or any or either of them, and that but for such influence unduly exercised as in these instructions defined, she would not have made or executed the said will or codicil in controversy, your verdict should be that the execution of such will and codicil so procured was the result of the undue influence of such person or persons."

[1] It is now insisted by appellant that there is no allegation in the petition for the revocation of the will charging undue influence on the part of W. I. Foley, and therefore, it was error for the court to submit to the jury either of the above questions in so far as they related to the exertion of undue influence on the part of W. I. Foley. For the same reason appellant complains of the giving of the foregoing instruction. It is true that there is no direct allegation in said petition that said will and codicil were procured by the undue influence of W. I. Foley, yet there are facts and circumstances set out in said petition, which if true would be tantamount to a direct allegation of undue influence on the part of W. I. Foley. It would appear that appellant so considered these allegations as they are specifically denied by her in her answer to said petition, and from the evidence it is apparent that the case was tried upon the theory that undue influence was alleged to have been exerted over the decedent by the said W. I. Foley. We, therefore, are of the conclusion that the court committed no error in the submission of these questions to the jury, nor in the giving of the above instruction.

[2] It is next claimed by the appellant that the jury did not find upon the issue of fraud. We have already noted the fact that the contest was based originally upon fraud, undue influence and unsoundness of mind, and that contestants dismissed as to the issue of unsoundness of mind, leaving two issues to be decided by the jury, namely, fraud and undue influence. In the two questions above set out, the court submitted to the jury the issue of undue influence. These were the only questions submitted to the jury. The question of fraud, as will be readily seen, was not included in either one of these questions. In the *Estate of Snowball,* 157 Cal. 301 [107 Pac. 598], the issue of undue influence and the issue of fraud were submitted to the jury. The jury in their verdict found in favor of the contestant upon the issue of undue influence, but failed to find upon the issue of fraud. On appeal the judgment based on said verdict setting aside the will was affirmed. The finding of the jury in favor of the contestant upon either issue would be fatal to the validity of the will, therefore, after a finding on one issue adverse to the will, a failure to find on the other issue would not constitute an error prejudicial to the rights of the proponent. A finding by the jury upon the second issue, either for or against the proponent, would not in any way be of any benefit to her. Therefore she cannot complain of such failure on the part of the jury.

[3] In support of her contention that the evidence is insufficient to justify the verdict appellant relies upon *Estate of Anderson,* 185 Cal. 700 [198 Pac. 407]. Quoting from page 708 of this decision, we find that ''The outstanding features of the case are simply: That the testatrix was a mature and intelligent woman of sound mind; that she was married to a man of wealth very much older than herself; that she was devotedly attached to her aunt, whom she regarded as her mother; that she had a little property of her own given her by her husband consisting almost entirely of stock in the corporation managed by her aunt's husband; that she was expecting a child and was fearful of the result of her confinement; that she wished to make provision as to the disposition of her estate and the care of her possible child in case she should die; that under the circumstances she made a will after consultation with a lawyer, and when she and the aunt were away from their

home together; and that the will provided for the division of her estate between the aunt and her child, if there should be one, and otherwise for its all going to the aunt, requested that the aunt be appointed guardian of the child, and stated that no provision was made for her husband as he had ample means of his own.'' It will readily be seen that the facts in the *Estate of Anderson, supra,* are materially different from those in the case before us. Here we have a woman past the age of eighty years left with considerable property by the death of her husband, inexperienced in the conduct of business, and dependent wholly upon the advice and assistance of others. The proponent, her daughter, living with her, assumed to advise and assist her mother and the latter accepted this advice and assistance in the management of her business affairs. An attorney represented them both in a will contest then pending. The decedent and proponent were in the office of the attorney. There is no evidence that decedent went to her attorney's office on this occasion with any intention of making a will, but while there the attorney suggested to her not only that she make a will but that she make it in favor of the proponent and her sister, Mrs. Thompson. Following immediately this suggestion of the attorney, and without any intimation on the part of the decedent as to whether she would act favorably upon the suggestion, the proponent, in the presence of her mother, reminds the attorney of the long time she had lived with her mother and cared for her. Whereupon, the attorney again, addressing the mother, says to her, ''Mrs. Little, you ought to remember your daughter, Mrs. Curson, well because she has been faithful to you.'' Following this conversation the decedent and the attorney repaired to the private office of the latter where the will was prepared and later signed by the decedent.

In the opinion of the *Estate* of *Anderson, supra,* is to be found an extended reference to the authorities of this state wherein the supreme court has held that the evidence was insufficient to set aside a will upon the ground of undue influence. In none of these cases, in our opinion, do the facts present so strong a case against the validity of the will as is found in the facts before us. Probably the strongest case of all these against the validity of the will is the *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932],

wherein it was sought to set aside a will on the ground of undue influence of three beneficiaries named therein. The supreme court held that a confidential relation existed between the decedent and these beneficiaries, but refused to set aside the will for the reason that "there is no evidence that either of them suggested to her (the decedent) any of the provisions contained in the will." How different are the facts in the case before us from these facts. The relation existing between the decedent on one hand and Mrs. Curson and their attorney on the other was no doubt of a confidential nature, and the testimony of Mrs. Curson herself is to the effect that the will in her favor was the result of the suggestion of the attorney, aided and supported by the supplication and importunities of herself.

In our opinion there is ample authority to sustain respondents' contention that the evidence in this case is sufficient to support the verdict. In the *Estate of Snowball*, 157 Cal. 301–307 [107 Pac. 598], the court said "The sum and substance of contestants' evidence was that the testatrix was unable to resist the importunities of her daughter and made the will under the influence thereof, so that so far as provision for H. H. Snowball was concerned, the will was in reality the will of the daughter and not that of the testatrix. There is nothing in the claim that the undue influence was not exercised directly upon the testamentary act. There was sufficient in the evidence of contestants to support a conclusion that it was used purely for the purpose of procuring the will, and that the will was the direct result thereof. While it is true that there must be proof that the influence was used directly to procure the will, general influence not brought to bear upon the testamentary act not being undue influence, . . . such proof exists where the evidence is of such a nature as to warrant the inference that the will was the direct result of the influence exerted for the purpose of procuring it, and was not the natural result of the uncontrolled will of the testatrix. (See *Estate of Arnold*, 147 Cal. 589 [82 Pac. 252] ; *Estate of Welch*, 6 Cal. App. 50 [91 Pac. 336].) "

In *Estate of Arnold*, 147 Cal. 583 [82 Pac. 252], upon the motion of the proponent of the will the court granted a nonsuit, but on appeal the supreme court reversed the case and held the evidence sufficient to require the submis-

sion of the case to the jury. The evidence upon undue influence was entirely circumstantial, but the court held it sufficient and further intimated that had the case been submitted to the jury and the jury returned a verdict in favor of the contestant that the supreme court would not have disturbed the verdict.

In *Estate of Gallo*, 61 Cal. App. 163 [214 Pac. 496], the appellate court set aside an order of nonsuit in favor of the proponent of the will, and held that "The mere existence of a confidential relation between a testatrix and one who unduly profits by the will is not sufficient to overturn it, but when such beneficiary has actually participated in procuring the execution of the will, the burden is on him to show that the will was not induced by coercion or fraud. (*Estate of Baird*, 176 Cal. 381, 384 [168 Pac. 561]; *Estate of Rick*, 160 Cal. 450 [117 Pac. 532]; *Estate of Lavinburg*, 161 Cal. 536 [119 Pac. 915]; *Estate of Packer*, 164 Cal. 525 [129 Pac. 778].)"

In the *Estate of Ramey*, 62 Cal. App. 413 [217 Pac. 135], the contest was based upon undue influence. This also was a case in which the evidence of undue influence was entirely circumstantial. The proponent of the will was a nephew of the deceased and attended to her business for some time prior to her death. One of the subscribing witnesses to the will, an attorney testified that before he would act as a witness to the will he examined the decedent privately and went over all of the terms of the will with her; that she thoroughly understood its contents and executed it voluntarily and without the exercise of undue influence over her by any person. The attorney who prepared the will corroborated the subscribing witness and there was no direct evidence to contradict the testimony of either of these witnesses, yet the jury found against the validity of the will and the appellate court affirmed the judgment.

Viewing the facts in this case in the light of these authorities and of others that could be mentioned, we are unable to say that the evidence is not sufficient to support the verdict.

What we have heretofore said applies entirely to the execution of the will. The codicil was signed some five years thereafter and under somewhat different circumstances. During the time, however, intervening between the signing

of these two documents, the relation of the parties had not changed. Mrs. Little, however, was ninety-four years of age at the date of the codicil. It had been prepared and sent to her home. The subscribing witnesses, or at least one of them, had been called in by Mrs. Curson, who produced the codicil for her mother's signature. Mrs. Little did not read it, nor was it read to her, nor were its contents made known to her in the presence of the subscribing witnesses before she signed it, or at any other time. Nor is there any evidence by any witness that Mrs. Little had ever read the codicil or knew of its contents before she signed it. We think it but reasonable to infer, as there was evidence sufficient to justify the jury in finding that the will itself had been executed by the decedent while under the undue influence of Mrs. Curson, and the evidence further showed that the relation of these parties at the time of the signing of the will continued up to and existed at the time of the signing of the codicil, that the latter document was the result of the efforts exerted by Mrs. Curson over her mother, and therefore, must be held to be void as executed under the same undue influence that invalidated the will.

The deeds executed by Mrs. Little in favor of Mrs. Curson and those in favor of Mrs. Thompson are not involved in this proceeding. The circumstances, however, of their execution may shed some light upon the issues involved herein. In the purported will of Mrs. Little is found an expression of an intention on her part to execute deeds in favor of these two daughters, and the evidence shows that immediately after the will was signed, that is, some four days thereafter, Mrs. Little deeded to Mrs. Curson the home place, and in September, following the signing of the will, she also deeded to Mrs. Curson the property situated in Lincoln, Nebraska. Nothing, however, was done toward executing deeds in favor of Mrs. Thompson until June, 1917, and then only after Mrs. Thompson had discovered that her mother had made deeds in favor of Mrs. Curson. Upon learning this fact, Mrs. Thompson called upon her mother and asked for deeds to the property which her mother was to give to her. Mrs. Little, while intimating that she wanted Mrs. Thompson to have her share of the property, referred Mrs. Thompson to Mrs. Curson, and the latter on being approached by Mrs. Thompson in regard to the

matter replied, "Sure, you can have it." The result was that the two deeds in favor of Mrs. Thompson were executed during the months of June and July, 1917, almost four years after the will was signed. We think it is only reasonable to infer from this testimony that Mrs. Little, in her advanced years, acted in business matters at least only upon the suggestion of others, and that during this time she relied so completely upon Mrs. Curson that she was unable without the assistance of the latter even to carry into effect her expressed intention to provide for Mrs. Thompson. We are of the opinion that from this testimony the jury could reasonably draw the conclusion that Mrs. Little during this time was under the influence and domination of Mrs. Curson to such an extent that she acted in important business matters only upon the advice and direction of Mrs. Curson, and that whatever matters were transacted by her, even to the signing of her purported will and codicil, were done at the suggestion and under the direction of Mrs. Curson.

[4] In addition to the grounds for reversal which we have already discussed, appellant criticises the form of verdict rendered in this proceeding and claims that it is in violation of section 1314 of the Code of Civil Procedure. It will be noted that the questions submitted to the jury required answers from them as to whether the will and codicil were procured by the undue influence of four persons named therein, or either or any of said persons. Appellant insists that she was entitled to a finding as to whether or not the will was secured by the undue influence of a particular individual and not such a finding as that which was rendered in this action, which she claims is merely a general verdict and therefore prohibited by the terms of section 1314 of the Code of Civil Procedure. There is nothing in the record of this case that suggests that the appellant, in the trial court, made any objection to the form of the questions submitted to the jury or that she requested any other or different form of questions for the jury's consideration, than that which the court submitted. The objection in our opinion, even if meritorious, comes too late when first made in this court. As to its merits, the only authority submitted by appellant in support of her contention is the *Estate of Hewitt,* 63 Cal. App. 440 [218 Pac. 778]. In that case the verdict was a general verdict and

bore no resemblance to the verdict in the case before us. In our opinion the verdict as rendered by the jury meets the requirements of section 1314 of the Code of Civil Procedure.

The order denying appellant's motion for a new trial and the order refusing to vacate and set aside the judgment, being nonappealable orders, the appeals therefrom are dismissed. Judgment affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 9, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 8, 1924.

All the Justices concurred, except Wilbur, C. J., who was absent, and Myers, J., who deemed himself disqualified.