[Civ. No. 10543. Second Appellate District, Division Two.—October 15, 1935.]

In the Matter of the Estate of NORA A. KNIGHT, Deceased. W. E. WESEMAN, Respondent, v. J. E. JUNE, Appellant.

Joseph M. Maltby for Appellant.

Oscar J. Seiler, Burr A. Brown and Philbrick McCoy for Respondent.

WOOD, J.—Nora A. Knight died on January 24, 1934, at the age of 82 years. Her holographic will, dated December 19, 1933, was presented for probate and was contested by W. E. Weseman, brother of deceased, upon the ground of undue influence on the part of proponent, J. E. June. The trial court found that the execution of the will was brought about by the undue influence of proponent and denied its admission to probate. From this judgment proponent appeals, contending that the evidence is insufficient to support the findings on the subject of undue influence.

The evidence on which the trial court based its finding of undue influence is, substantially, as follows: Mrs. Knight lived on real property which she owned of the value of about $7,000, this property comprising about seven-eighths of her estate. Several years before her death Mr. June, who at the time of the trial was 79 years of age, rented a room in the home of deceased, with kitchen privileges, for the sum of $10 per month. On June 5, 1933, Mrs. Knight suffered a cerebral hemorrhage which resulted in partial paralysis of her left side. On that day she was visited by a number of neighbors, among them Mrs. Kirkland. Mrs. Knight requested Mr. June to call a notary public. Mrs. Kirkland suggested the name of Velma Fuhrer. Mr. June called for Mrs. Fuhrer, who returned to the home with him. In the presence of a nurse and the proponent, the notary public prepared "a codicil to the last will and testament of Nora A. Knight", giving to Mr. June a life estate in the home and naming Mr. Kirkland executor. She also prepared a bill of sale giving Mr. June her furniture. These documents were signed by Mrs. Knight. After June 5, 1933, Mrs. Knight improved in health. Early in October she suffered a slight stroke of paralysis. During the six years that proponent lived in the home of deceased the relationship of landlady and tenant ripened into one of mutual affection. Mr. June cared for the premises, did much of the house work, attended to business affairs and ran numerous errands for Mrs. Knight. After the illness of June 5th the acts of service and of kindness on the part of proponent increased. The nearest approach

to testimony showing any activity on proponent's part in securing the execution of the will in question comes from the proponent himself. He states that two or three days before the will was made Mrs. Knight asked him to get a tablet "when he went down by the Ten-Cent Store"; that she did her writing when the nurse was out, Mrs. Knight saying, "The nurse tells everything"; that Mrs. Knight asked him to write the word "executor" on a piece of paper because she said she did not know how to spell it. Mr. June further testified: "I did so, and then she showed me, she showed me on that what she had written—'I want June to be executor'. That is all I know about the will.. She showed that to me. I was impressed it was a will on that account, and then now she says, 'You write your name on an envelope', and I did, and gave it to her, and she put that paper into the envelope and sealed it with her own hands, and she says, 'This is not to be opened as long as I live, and I shall write it on the envelope "This envelope is not to be opened as long as Mrs. Knight lives".' Now, she says, 'Put it in your trunk with my other papers', and I did so."

In case of intestacy Mrs. Knight's property would go to contestant, a brother living in another state and in no need of assistance. In the will offered for probate the home property is given to proponent in fee.

█ Among the findings of the trial court the following appears: "That at the time said will is purported to have been executed the said June succeeded in substituting his will for the will of said decedent, and used his said influence over the said decedent and induced her to execute the said document purported to be the last will and testament of the decedent; that the said June, by supplanting his will for that of the decedent, and by taking advantage of the trust and confidence reposed in him by the said decedent, succeeded in having the decedent devise and bequeath to him by the said document purporting to be her last will and testament the real property of the decedent . . . " In our opinion the proof falls short of the requirements to support this finding. The formal execution of the will is conceded and no contention has been presented that the testatrix did not have mental capacity to make a will. "In order to establish that a will has been executed under undue influence, it is necessary to

show, not only that such undue influence has been exercised, but also that it has produced an effect upon the mind of the testator, by which the will which he executes is not the expression of his own desires." (*Estate of Calkins*, 112 Cal. 296 [44 Pac. 577].) "The presumption of undue influence is not raised by proof of interest and opportunity alone. In order to set aside a will for undue influence, there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made." (*Estate of Langford*, 108 Cal. 608 [41 Pac. 701].) Doubtless contestant has proved a confidential relationship between deceased and proponent and perhaps a weakened mental condition on the part of deceased, together with opportunity to exert undue influence. On the other hand it cannot be successfully maintained that the will was unnatural or that proponent took such a part in the execution of the will as to throw the burden of proof on him to show freedom from undue influence. To hold that proponent performed any act that could be classified as an act of undue influence would be to enter upon the field of conjecture.

The judgment is reversed.

Crail, P. J., and Gould, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 8, 1935.