[Civ. No. 10079.  Second Appellate District, Division Two.—May 18, 1936.]

In the Matter of the Estate of BARBARA MULLER, Deceased.  ELIZABETH KRAMER et al., Respondents, v. NORMA D. BODIN et al., Appellants.

S. S. Hahn and W. O. Graf for Appellants.

Hugh E. Macbeth and Raphael Dechter for Respondents.

GOULD, J., *pro tem.*—When the purser of a coastwise passenger vessel checked off his "berthing sheet" upon arrival at Wilmington, California, April 3, 1933, two passengers, "Mr. and Mrs. Smardon", did not disembark. Search of their cabin revealed no occupants, but two notes. One, addressed to the purser, read: "You have two individuals as your guests traveling under a *nom de plume* of Smardon. The true names are J. R. Bodin and Barbara Muller." The other, addressed "To Whom it May Concern", was couched in this language: "We are leaving this world knowing fully what we are doing, and for reasons of our own, which will eventually mean eternal love and happiness." Each note was signed with the two names J. R. Bodin and Barbara Muller. Suspicion of suicide was confirmed as to Bodin when his body was washed ashore on the Orange County coastline a few days later. The woman's body has never been recovered.

On April 4th, the day after the pair's disappearance, an employee of the Bank of America in Los Angeles received through the mail an envelope postmarked April 3, 1933, Wilmington, California, and containing the following document: "Bank of America, Trust Dept. 7th & Spring, Los Angeles. March 28, 1933. Attention Mr. L. C. Hall: In

the event of my death I do hereby request that all my rights and equity of my estate and the estate of Bessie Handschiegl and Max Handschiegl be assigned to Jack Bodin, Jr., 452 N. Western Ave., Los Angeles. I also assign to the above all real and personal property. The above is subject to my rescission. Yours truly, Barbara Muller.'' The Handschiegls mentioned in the above document were the deceased parents of Barbara Muller, who was their sole heir and devisee; Jack Bodin, Jr., is the minor son of the J. R. Bodin who was her companion on the steamship.

When the above document was offered for probate in the Superior Court of Los Angeles County as Barbara Muller's holographic will, written opposition was filed by two aunts as the heirs at law of said deceased, and a petition in intervention was presented in behalf of one Audrey Louise Bowdin, illegitimate daughter of deceased and her companion, J. R. Bodin (otherwise known as Jack Bodin, Sr.), born August 1, 1932. No mention of this illegitimate child is made in the will, she was not produced at the hearing, and so far as the record in this case is concerned it is purely a matter of conjecture whether or not she is alive.

Contest against the admission of the purported will was based upon three grounds, viz.: that Barbara Muller was not of sound and disposing mind at the time the document was executed; that the instrument was not properly executed and was not wholly in decedent's handwriting; and that it was not the free and voluntary act of decedent but was the result of the undue influence of Jack Bodin, Sr. In behalf of the illegitimate child the additional point was made that the will omitted to provide for her or to mention her at all. Upon trial without jury the court found specifically that the will was duly executed, that it was wholly written, dated and signed by the testatrix, and that she was sane and of sound mind at the time. However, probate was denied upon the ground that the document was procured by the undue influence of Jack Bodin, Sr. Appeal is taken in behalf of the minor legatee and devisee by his mother, proponent of the will.

The testatrix was twenty-one years old at the time of her death. She had been intimately associated for about three years with her companion at the time of her disappearance, a married man twice her age and who had served a

term in the penitentiary in 1913 for embezzlement and forgery. Testimony was to the effect that the latter was dominant in the life of Barbara Muller, that he handled many of her business transactions, that she commonly deferred to his wishes, that she was at times physically ill and mentally distraught, that he quarreled with her at times and that on at least one occasion he struck her.

It may be admitted that due to the relationship and constant association between the pair the opportunity was afforded Bodin to influence his companion in her testamentary act. ■ But intimacy of association is not proof of domination; and no inference of undue influence in the matter of the execution of a will is to be drawn from the mere existence of a confidential or intimate relationship. (*Estate of Morcel,* 162 Cal. 188 [121 Pac. 733].) Nor does opportunity to exert undue influence warrant the inference that the will was not the free act of the testator. (*Estate of Knight,* 9 Cal. App. (2d) 454 [50 Pac. (2d) 475].) "In order to set aside a will for undue influence there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made." (*Estate of Langford,* 108 Cal. 608 [41 Pac. 701, 705].) It is significant in the case here under consideration that there was no proof whatsoever as to what may have transpired at the time the will was executed, six days before the double suicide. It is not shown that the testatrix and Bodin were together upon that day or that the matter of the testamentary disposition of property was ever discussed by them. ■ Neither is the situation present here where the person who is alleged to have wrongfully exerted the undue influence profits by the act of the testator. No benefit flowed to Jack Bodin, Sr., from Barbara Muller's testamentary act. Consequently no burden is cast upon the proponent of her will to show that it was not induced by coercion or fraud. (*Estate of Shay,* 196 Cal. 355 [237 Pac. 1079].)

■ Respondents contend in defense of the judgment that the will was so unnatural as to indicate subversion of decedent's testamentary freedom. Unnatural provisions of a will do not of themselves afford ground for setting it aside. (*Estate of Martin,* 170 Cal. 657 [151 Pac. 138].) Moreover, it does not appear that the Barbara Muller will was so unnatural in its provisions as to indicate doubt either as to her

freedom or competency in its execution. Except for the pretermitted illegitimate daughter, decedent's heirs at law were her aunts, with whom she had little if any contact for a period of years before her death. As to the daughter, as indicated above, her present existence is in doubt, and all her rights in her mother's estate would be completely assured to her by her appearance to claim them, inasmuch as she would then take her full share as a pretermitted child. (Probate Code, sec. 90.) ██ Conceding that no single circumstance in this case, standing alone, may be said to be sufficient to deny probate to the will, respondents argue that the combination of circumstances is sufficient to warrant the fact-finder's conclusion that the will was not the voluntary act of the testatrix, relying upon such cases as *Estate of Snowball*, 157 Cal. 301 [107 Pac. 598], and *Estate of Little*, 64 Cal. App. 695 [223 Pac. 416]. We cannot agree with this contention. Aside from the close association of testatrix and Bodin and the consequent opportunity afforded him to guide her in her testamentary act, together with his dominance in business matters and her weakened physical condition, there is nothing in the case to fortify respondents' position. These facts are insufficient to justify a finding of undue influence. Even if the relations between decedent and the alleged wrongdoer afforded the latter an opportunity to exert undue influence, it is apparent that to hold that he did anything that could be classified as an act of that nature would be, adopting the language of *Estate of Knight, supra,* "to enter upon the field of conjecture".

Judgment reversed.

Wood, J., and Crail, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 16, 1936. Seawell, J., Curtis, J., and Langdon, J., voted for a hearing.