[L. A. No. 4669. Department One.—March 14, 1917.]

In the Matter of the Estate of ELIZA J. STODDART, Deceased.

WILL—UNDUE INFLUENCE—FRAUDULENT REPRESENTATIONS.—Undue influence invalidating a will may be exerted by means of fraudulent representations.

ID.—WHEN WILL IS RESULT OF UNDUE INFLUENCE.—A will is obtained by undue influence where improper pressure, or other unfair conduct, has overcome the volition of the testator, and resulted in his executing a paper which represents, in fact, not his will, but that of the person exercising the influence over him.

ID.—PETITION FOR REVOCATION OF WILL—SUFFICIENT ALLEGATIONS OF UNDUE INFLUENCE.—A petition for the revocation of a will which alleges, in effect, that the will was not the result of the uncontrolled will of the testatrix, and sets forth the means by which the will of the beneficiaries was imposed upon the testatrix, consisting of repeated importunities and ·misrepresentations designed to compel, and alleged to have been effective in compelling, the execution of the will in accordance with the desires of such beneficiaries, rather than with those of the testatrix herself, sufficiently avers that the will was obtained through undue influence to entitle the contestants to a trial of that issue.

ID.—TESTATRIX OF ADVANCED YEARS AND DEBILITATED CONDITION— RESTRAINT OF TESTATRIX.—The fact that the testatrix, although not lacking testamentary capacity, was of advanced years and debilitated condition, is material as bearing upon her alleged inability to resist such importunity; and the circumstance that she was dependent upon certain of her daughters, who were the main

beneficiaries of her will and the persons alleged to have exerted the undue influence, and was by them kept from communication with the contestants, although not sufficient in itself to show undue influence, may be considered in connection with the other averments.

APPEAL from a judgment of the Superior Court of Los Angeles County.   James C. Rives, Judge.

The facts are stated in the opinion of the court.

J. Wiseman Macdonald, for Appellant.

Bowen & Bailie, William A. Bowen, and Gray, Barker & Bowen, for Respondents.

SLOSS, J.—A paper purporting to be the will of Eliza J. Stoddart, deceased, was admitted to probate in the superior court of Los Angeles County on January 25, 1914.   The decedent was a widow and left surviving, as her sole heirs, a son, four unmarried daughters, and two married daughters.

The son and the two married daughters filed a petition for revocation of the probate of the will.   Demurrer to this petition was sustained, and the contestants filed an amended petition.   The second pleading was also demurred to, and the demurrer sustained, whereupon the petitioners filed a second amended petition.   A demurrer was again interposed, and was sustained without leave to the petitioners to amend. Thereupon the court entered judgment dismissing the contest.   From this judgment the petitioners appeal.

The question for decision is whether the second amended petition states facts sufficient to constitute a cause of contest.   At the time of her death Eliza J. Stoddart had been a widow for about forty years.   She left an estate valued, according to the petition for probate, at about one hundred and sixty thousand dollars, and derived from the estate of her deceased husband, David Stoddart.   In 1905 Mrs. Stoddart had made a will in which, after appointing as executrices her daughters, Mary Euretta and Evelyn Louise Stoddart, and bequeathing to them the sum of ten thousand dollars for purposes not specified in the will, she gave the residue of her estate to her seven children, or the survivors of them, in equal shares.   This document provided that in no case should any portion of her estate "be used in the business ventures

of my daughters' husbands or son's wife, but shall remain the *separate property* of the child to whom given.'' The will now in controversy was made at Oakland on the seventh day of January, 1910. It gave to the four unmarried daughters, Mary E., Florence E., Evelyn L., and Bessie D. Stoddart, the residence occupied by the decedent with her said daughters, and certain personal effects; to each of the married daughters, Grace Shattuck and Emily Newton, the sum of five thousand dollars; to the son, Augustus W. Stoddart, the sum of one thousand dollars, and all sums theretofore advanced to him; to Evelyn L. and Mary E. Stoddart, the sum of ten thousand dollars in trust to pay the income thereof to Augustus W. Stoddart during his life, the principal, upon his death, to vest in the six daughters, or the survivors of them. The residue of the estate was given to such of the daughters as should survive the testatrix, in equal shares, provided that, if the married daughters, or either of them, should survive the testatrix, and not then be widows, their shares were to be held in trust, the income to be paid to said married daughters during their lives, or until widowhood. In the event that either married daughter should become a widow, the trust fund should at once vest in her. If she should die, leaving her husband surviving, her share should vest in the unmarried daughters, or the survivors of them, in equal shares; unless the unmarried daughters should all predecease their sisters, in which event the trust funds should vest in the married daughters. Mary E. and Evelyn L. Stoddart were named executrices of the will, with power in a majority of the daughters to select successors to them.

Revocation of the probate was sought on the ground of undue influence. The allegations are substantially these: After the making of the will of 1905, and prior to the execution of the will of January, 1910, Florence E., Evelyn L., and Bessie D. Stoddart frequently stated to their mother, Eliza J. Stoddart, that Augustus W. Stoddart had already received a great portion of his inheritance, and that he was entitled to but very little more from Mrs. Stoddart's estate, whereas, in fact, he had received only four thousand dollars, and his share of the estate, if it were equally divided among the seven children, would be about forty-three thousand dollars; that said Florence E., Evelyn L., and Bessie D. Stoddart also stated on many occasions to the decedent that her

married daughters should not receive their portion of her estate during the lifetime of their respective husbands, because said husbands were of extravagant habits and were engaged in speculative enterprises, and if said married daughters should receive their portions, the said husbands would get the same from them, and would spend or lose the same in speculation. The said three unmarried daughters also represented to their mother on many occasions that it would be imprudent to leave any portion of her estate to any of the children of said daughters, for the reason that, if such were done, the respective fathers of the said children would get the same, and would spend or lose it in speculation. All of these representations, it is alleged, were untrue, and were made to the decedent for the purpose of prejudicing and influencing her against the petitioners and the husbands of the married daughters, so that she would not leave to the son or the married daughters as great a share of her estate as would go to any of the unmarried daughters. Said Florence E., Evelyn L., and Bessie D. Stoddart urged these misrepresentations upon the decedent, and pressed her not to leave her property so that the husbands of her married daughters could get the shares of their wives from them, "and said decedent was unable to resist such importunity and pressure, and the same controlled her mind at the time said alleged last will was made, and without the same decedent would not have made said will." It is alleged further that at the time these representations were made, Eliza J. Stoddart was advanced in years, and was growing blind and infirm; that her four unmarried daughters resided with her, and she depended upon them, and all of her business matters were transacted by them; that they would not permit the married daughters to talk alone with their mother on business matters. The petition alleges, on information and belief, that the decedent did not wish to change her will of 1905, and would not have changed it but for the misrepresentations made to her, as heretofore set forth, or but for the urging and importuning of her said four unmarried daughters to leave her property in the manner set forth in the will of January, 1910. If the misrepresentations had not been made, and the decedent had not been urged and importuned by her unmarried daughters, and if they had not dominated her mind, she would not have executed the will of January,

1910, and would have died leaving the will of June, 1905. There is a further allegation that at all times the mother entertained feelings of devotion and affection toward all of her children.

It must be borne in mind, throughout this discussion, that we are considering the sufficiency of a pleading, and nothing else. A quite different question would be presented if the contest had been tried, and we were called upon to decide whether the evidence introduced warranted a verdict in favor of the contestants. No doubt the petition, whether based upon fraud or undue influence, must allege facts from which it can be seen that one or the other of these grounds of contest exists. The mere averment that the will was induced by fraud or by undue influence is the statement of a legal conclusion, and of no avail by itself. But certainly a pleading of any kind is required to state only ultimate facts, and need not specify in detail the evidence by which it is designed to prove those facts.

As we have already said, the charge sought to be made by the appellants is that the will was procured to be made by undue influence. Misrepresentations are set forth, but they are not relied on as an independent ground of contest. Undue influence and fraud are separate grounds of attack. (*Estate of Ricks,* 160 Cal. 467, [117 Pac. 539].) But fraud or misrepresentation may be an element of undue influence. Undue influence, in other words, may be exerted by means of fraudulent representations. (*Estate of Snowball,* 157 Cal. 301, [107 Pac. 598] ; *Estate of Ricks, supra.*) A will is obtained by undue influence where improper pressure, or other unfair conduct, has overcome the volition of the testator, and resulted in his executing a paper which represents, in fact, not his will, but that of the person exercising the influence over him. (*Estate of Ricks, supra; Estate of Snowball, supra; Estate of Arnold,* 147 Cal. 583, [82 Pac. 252].)

Respective counsel have indulged in elaborate analyses of the facts alleged, and from them have drawn their opposing inferences. These arguments might appropriately be addressed to the trial court or jury after the introduction of the evidence, or to this court on appeal from a judgment revoking the probate of the will. It may well be that the petition discloses various circumstances which may be viewed as supporting the claim that the document executed by Mrs.

Stoddart was the expression of her free and independent desires. It may be, too, that the facts which the appellants will be able to prove in support of the averments of their petition would not sustain a verdict against the validity of the will. But on this appeal, which raises a question of pleading alone, we can look only to the petition, and are limited to the inquiry whether it contains, within its many allegations, the statement of any facts constituting a charge of undue influence.

We find that the petition alleges that at the time of the making of the will Mrs. Stoddart was advanced in years, and was. growing blind and infirm; that her unmarried daughters resided with her and attended to her business affairs, and that she had become dependent upon them. It is alleged that the representations made to her regarding the claims upon her bounty of her son and her married daughters were false, and were made with the intention of prejudicing her against such son and daughters; that these misrepresentations were frequently and repeatedly made and urged upon her, and that she was unable to resist them; with the result that the misrepresentations and urgings controlled her mind at the time her will was made, and she would not have made the will without them. There are further allegations that one of the unmarried daughters was present at the time of the execution of the will, and arranged the details of its execution, and that the fact of the making of the will, although known to all of the unmarried daughters, was concealed from one of the contestants, although she was then living in the same hotel with the decedent and the respondents.

We are not prepared to say that these allegations are not sufficient to entitle the petitioners to a trial of the issue of undue influence. The pleading alleges, in effect, that the will was not "the natural result of the uncontrolled will of the testatrix." (*Estate of Snowball,* 157 Cal. 301, [107 Pac. 598].) This is the ultimate test of the existence of undue influence. The petition does not state this as a mere conclusion, but sets forth, in addition, the means by which the will of the respondents was imposed upon the testatrix. These means consisted of repeated importunities and misrepresentations designed to compel, and alleged to have been effective in compelling, the execution of a will in accordance with the desires of the respondents, rather than with those

of the testatrix herself. While it is not claimed that Mrs. Stoddart lacked testamentary capacity, the fact of her advanced years and debilitated condition was material, as bearing upon her alleged inability to resist importunity and pressure of this kind. So, too, the circumstance that she was dependent upon her unmarried daughters, and was by them kept from communication with the contestants, is a statement of fact which, although not sufficient in itself to show undue influence, may be considered in connection with the other averments.

The respondents argue with great earnestness that the misrepresentations set out in the petition related to matters of opinion, and that they would not be sufficient to support an attack on the ground of fraud. But conceding this, they may still, if designedly and unfairly used as part of a scheme to overcome the will of the testatrix, and compel her to carry out the will of the respondents, be regarded as constituting, together with the other facts alleged, the exercise of undue influence.

We think the demurrer should have been overruled.

The judgment is reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.