Filed 2/5/24  Gardella v. San Joaquin County Public Conservator CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DEVLIN GARDELLA, | C097745 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. STKPRTR20190000220) |
| SAN JOAQUIN COUNTY PUBLIC CONSERVATOR, as Trustee, etc., et al., | |
| Defendants and Respondents. | |

Devlin Gardella[1] filed a probate petition challenging amendments to a trust created by his mother Cynthia.  Devlin claimed Cynthia lacked capacity to execute the amendments and that other family members unduly influenced her.  The probate court denied Devlin's petition.

---

[1]  We will refer to members of the Gardella family by their first names for clarity.

1

Devlin now contends the probate court erred in (1) evaluating Cynthia's mental capacity under Probate Code section 6100.5[2] rather than sections 810 to 812, and (2) failing to consider the entirety of the circumstances in deciding whether there was undue influence. Finding no error, we will affirm the probate court's order.

BACKGROUND

Cynthia executed the Cynthia J. Gardella Trust (the trust) in 2007. She was the trustee and beneficiary of the trust. The beneficiaries to the remainder of the trust estate included her children Stephen, Devlin, Stephenie, Shelby, and Mark, and her grandson Evan. Cynthia amended the trust on October 24, 2013, and amended it again on August 18, 2016. The second trust amendment eliminated any distribution to Devlin. Cynthia's long-time attorney Bradford Dozier prepared the trust and trust amendments. Dozier died in October 2018.

On September 29, 2016, after the second amendment, two doctors determined that Cynthia was medically incapacitated and that she required a health care proxy to make health care decisions. Stephen and Stephenie became co-trustees of the trust.

On February 21, 2019, Shelby filed a petition in probate to remove Stephen and/or Stephenie as co-trustees. Stephen and Stephenie resigned as co-trustees effective October 3, 2019, and designated the San Joaquin County Public Conservator (Public Conservator) as successor trustee of the trust. The Public Conservator was also appointed as conservator of the person and estate of Cynthia. Stephen died in November 2019.

On July 7, 2020, the Public Conservator filed a probate petition to surcharge Stephenie about $1.24 million, alleging that Stephen and Stephenie breached their duties as co-trustees of the trust. Stephenie and the Public Conservator settled the matter.

---

[2] Undesignated statutory references are to the Probate Code.

2

Devlin filed a probate petition challenging the validity of the first and second trust amendments, asserting that Cynthia was not competent to execute the amendments and that Stephen and Stephenie unduly influenced her to amend the trust. Shelby filed objections to the petition, and the Public Conservator filed a response.

Cynthia passed away on May 30, 2022. The parties agreed to submit the matter by filing written briefs. The probate court ultimately issued a written order denying Devlin's petition.

## DISCUSSION

### I

Devlin contends the trial court erred in evaluating Cynthia's capacity to execute the trust amendments under section 6100.5 rather than under sections 810 to 812.

The determination of a person's mental capacity to do an act is fact specific. (*Algo-Heyres v. Oxnard Manor LP* (2023) 88 Cal.App.5th 1064, 1071 (*Algo-Heyres*); *In re Marriage of Greenway* (2013) 217 Cal.App.4th 628, 639.) Courts have held that mental capacity is measured on a sliding scale. (*In re Marriage of Greenway,* at p. 639.) Capacity to make a decision or do a particular act depends on the complexity of the decision or act; more mental capacity is required to enter a contract than to make a will. (*Id.* at pp. 639, 641-642.)

The standard for determining capacity to make a will, set forth in section 6100.5, applies to trusts and trust amendments that, in content and complexity, closely resemble a will. (*Eyford v. Nord* (2021) 62 Cal.App.5th 112, 122, fn. 6; *Andersen v. Hunt* (2011) 196 Cal.App.4th 722, 731 (*Andersen*).) But when the trust or trust amendment is more complex than a will or codicil, we evaluate mental capacity under sections 810 through 812. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1038 (*Gomez*); *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1352-1353 (*Lintz*).)

Devlin asserts that the probate court should have applied the standard for determining contractual capacity, set forth in sections 810 to 812, because the first and

3

second trust amendments are complex. Although the probate court cited section 811, subdivision (d), it applied the standard in section 6100.5, focusing on whether, at the time Cynthia signed the amendments, she understood the nature of those instruments and what she was doing. Even if the probate court applied the wrong standard, for reasons we will explain, the court did not err in ruling that there was insufficient evidence to establish that Cynthia lacked mental capacity to execute the trust amendments. We will not disturb the probate court's ruling if it is correct in law but given for a wrong reason. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19; *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451.)

The Due Process in Competence Determinations Act (Act) (§ 810 et seq.) describes the standard for determining whether a person lacks capacity to make a contract. (*Gomez, supra*, 54 Cal.App.5th at p. 1040; see *In re Marriage of Greenway, supra*, 217 Cal.App.4th at pp. 640, 642.) The Act establishes a rebuttable presumption that all persons have the capacity to make decisions and to be responsible for their acts or decisions. (§ 810, subd. (a).) This presumption may be rebutted by a showing that the person is deficient in at least one of the following mental functions -- (1) alertness and attention, (2) information processing, (3) thought processes, and (4) ability to modulate mood and affect -- and that there is a causal link between the deficit(s) and the act in question. (§§ 810, subd. (c), 811, subd. (a).) The deficit(s) must significantly impair the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question. (§ 811, subd. (b).) In determining whether a person has a deficit in mental function so substantial that the person lacks the capacity to do a certain act, the court may take into consideration the frequency, severity and duration of periods of impairment. (§ 811, subd. (c).)

The Act does not provide a single standard for contractual capacity. (*Andersen, supra*, 196 Cal.App.4th at p. 730; *Smalley v. Baker* (1968) 262 Cal.App.2d 824, 832.) More complicated decisions and transactions require greater mental function; less

4

complicated decisions and transactions require less mental function. (*Lintz, supra*, 222 Cal.App.4th at pp. 1352-1353; *Andersen,* at p. 730*.*)

The party claiming incapacity bears the burden of proving mental incapacity. (*Gomez, supra*, 54 Cal.App.5th at p. 1040.) Whether a person lacked the mental capacity to enter a contract at a given time is a factual question that we review for substantial evidence. (*Algo-Heyres, supra*, 88 Cal.App.5th at p. 1070; *Gomez, supra*, 54 Cal.App.5th at pp. 1040-1044; see *Dunphy v. Dunphy* (1911) 161 Cal. 380, 384.) On review, we consider all the evidence in the light most favorable to the prevailing party, giving that party the benefit of every reasonable inference, and resolving all conflicts in favor of the probate court's findings. (*Algo-Heyres,* at p. 1070; *Gomez,* at p. 1026.) We do not reweigh the evidence. (*Algo-Heyres,* at p. 1070.) We must uphold the probate court's finding if it is supported by substantial evidence, even though substantial evidence to the contrary also exists and the probate court might have reached a different result had it credited other evidence. (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) The appellant must show that there is no substantial evidence to support the challenged finding. (*Walton v. Bank of California, National Assn.* (1963) 218 Cal.App.2d 527, 540 (*Walton*).)

Medical records show that although Cynthia had various physical ailments in June to October 2013, the time period relevant to the first trust amendment, she could communicate with her health care providers and make health care decisions. (*Algo-Heyres, supra*, 88 Cal.App.5th at pp. 1067-1069, 1071-1072 [relying on information in medical records to conclude that substantial evidence supported the trial court's finding of lack of capacity to enter a contract].) There is no evidence that she had a deficit in alertness and attention, information processing, thought processes, and/or ability to modulate mood and affect, that impaired her ability to execute the first trust amendment on October 24, 2013. (§§ 810, subd. (c), 811, subds. (a), (b).)

5

As for the time period relevant to the second trust amendment, there are comments in the medical records that Cynthia had dementia, should be evaluated for senile dementia, or exhibited symptoms of dementia on particular dates in June, July and September 2016. But even if she had some level of dementia before or after she executed the second trust amendment, that does not, by itself, establish lack of mental capacity. (§ 811, subd. (d); *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 743; *Holman v. Stockton Sav. & Loan Bank* (1942) 49 Cal.App.2d 500, 508 [the law in this state is clear that dementia does not necessarily render one incapable of executing contracts or transacting business].) A settlor must have capacity at the time he or she executed the challenged instrument. (*American Trust Co. v. Dixon* (1938) 26 Cal.App.2d 426, 432-438; see *Walton, supra*, 218 Cal.App.2d at pp. 541-542.) The record indicates Cynthia had lucid moments. On June 24, 2016, she was alert, oriented, and able to answer all questions appropriately during an emergency room visit. During a July 21, 2016 visit to the dermatology department, a doctor discussed treatment with Cynthia, and Cynthia was able to give verbal consent for treatment. Almost a month later, Cynthia signed an advanced health care directive and the persons who witnessed the signing, including her attorney, declared under penalty of perjury that at the time of the signing Cynthia appeared to be of sound mind. To establish the mental incapacity of a person who is sometimes lucid, there must be evidence the person executed the challenged document when they were incapacitated. (*Andersen, supra*, 196 Cal.App.4th at p. 727; *Estate of Goetz* (1967) 253 Cal.App.2d 107, 114.) None of the matters Devlin points to in his appellate brief establish that Cynthia had a cognitive deficit that impaired her ability to change the disposition of the trust assets when she executed the second trust amendment.

Devlin argues the probate court erred in presuming that Cynthia was sane and competent. But the Act establishes a rebuttable presumption that all persons have capacity. (§ 810, subd. (a); *Algo-Heyres, supra*, 88 Cal.App.5th at p. 1070; *Hagen v.*

6

*Hickenbottom* (1995) 41 Cal.App.4th 168, 172, 181-182 (*Hagen*).)  In any event, the evidence presented did not demonstrate that Cynthia lacked mental capacity at the time she executed the trust amendments.

Devlin says there was evidence that Cynthia could not manage her own financial resources, and therefore, under Civil Code section 39, subdivision (b), the burden was on the party claiming capacity, not Devlin, to prove that Cynthia was capable of contracting. But because Devlin did not assert the Civil Code section 39, subdivision (b) presumption in the trial court, we need not address the argument now.  (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 907; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.)

## II

Devlin also contends that the probate court erred in failing to look at the entirety of the circumstances in deciding whether there was undue influence.

## A

The Probate Code defines undue influence as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity."  (§ 86; Welf. & Inst. Code, § 15610.70, subd. (a).)  In determining whether a result was produced by undue influence, a court must consider the vulnerability of the victim, the influencer's apparent authority, the actions or tactics used by the influencer, and the equity of the result.  (Welf. & Inst. Code, § 15610.70, subd. (a).)  The statutory provisions regarding undue influence supplement the common law meaning of undue influence.  (§ 86.)

Under the common law, undue influence refers to "pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency."  (*Rice v. Clark* (2002) 28 Cal.4th 89, 96; accord *In re Estate of Stoddart* (1917) 174 Cal. 606, 610.)  Mere opportunity and motive to influence the settlor is not enough.  (See *Estate of*

7

*Fritschi* (1963) 60 Cal.2d 367, 373-374, 377.)  There must be evidence that pressure was brought to bear upon the testamentary act at the time the challenged instrument was executed; in other words, it must be shown that the alleged influencer actively participated in preparing the challenged instrument.  (*Ibid.*; *Hagen, supra*, 41 Cal.App.4th at p. 182.)

The party claiming undue influence has the burden of proving that the settlor executed the challenged instrument under the undue influence of another.  (*Gomez, supra*, 54 Cal.App.5th at p. 1040; *Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 545.)  This burden has been described as "heavy" and requiring a "strong showing." (*Doolittle*, at p. 545; *Estate of Ventura* (1963) 217 Cal.App.2d 50, 58.)  Undue influence may be established by circumstantial evidence and the reasonable inferences drawn from that evidence.  (*Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125; *Lintz, supra*, 222 Cal.App.4th at p. 1355.)  But the circumstantial evidence must raise "more than a mere suspicion that undue influence was used . . . .  Clear and convincing proof is required." (*Estate of Truckenmiller* (1979) 97 Cal.App.3d 326, 334.)  We review a finding of undue influence for substantial evidence.  (*Levin v. Winston-Levin* (2019) 39 Cal.App.5th 1025, 1040-1042; *Butler v. LeBouef* (2016) 248 Cal.App.4th 198, 208.)

B

The probate court cited Welfare & Institutions Code section 15610.70 and considered the factors in the statute.  With regard to vulnerability of the victim, it found that even though medical records showed Cynthia was ill in 2013, her doctors still listened to her directions and decisions.  As for 2016, medical records showed Stephen and Stephenie helped Cynthia with her health care but Cynthia was still making her own decisions, and because doctors were asking Cynthia to execute a health care directive, they still thought Cynthia had capacity to do so.

With regard to the actions or tactics used by the alleged influencers, the probate court said that nothing in the evidence regarding 2013 showed that Stephenie, Stephen

8

and/or Evan controlled Cynthia, made decisions for her, limited access to her for other family and friends, or initiated the changes in the first trust amendment in any way. There was no evidence that Stephen, Stephenie and/or Evan exclusively or even primarily controlled Cynthia's access to health care, medications or information. And the evidence did not show that the changes in Cynthia's estate plan were made in haste or secrecy, were instigated by Stephen, Stephenie and/or Evan, or were the product of the use of affection, intimidation or coercion by Stephen, Stephenie and/or Evan. The probate court made the same findings with regard to the second trust amendment. It also found that Devlin did not establish fraud as an element of undue influence. It determined that although it appeared likely fraud and breach of fiduciary duty occurred once Stephen and Stephenie took over as successor co-trustees, there was no evidence of fraud leading to the execution of the trust amendments. The probate court concluded Devlin had not established that Stephen, Stephenie and/or Evan exerted undue influence to obtain an interest in Cynthia's property that resulted in the first or second trust amendments.

C

Devlin argues it was error for the probate court to consider only those examples of improper actions or tactics enumerated in Welfare and Institutions Code section 15610.70, subdivision (a)(3). As the appellant, Devlin bears the burden of demonstrating error (*In re Estate of Armstrong* (1937) 8 Cal.2d 204, 209), but he does not state what other actions or tactics the probate court should have considered in assessing his undue influence claim. We reject the undeveloped claim.

Evidence of actions or tactics used by the alleged influencer may include controlling necessaries of life, medication, the victim's interactions with others, access to information, or sleep; use of affection, intimidation or coercion; and initiation of changes in personal or property rights, use of haste or secrecy in effecting those changes, effecting changes at inappropriate times and places, and claims of expertise in effecting changes. (Welf. & Inst. Code, § 15610.70, subd. (a).) Even if Cynthia was vulnerable, there is no

9

evidence that in 2013 Stephen, Stephenie and/or Evan controlled any of the matters or engaged in any of the actions or tactics described in Welfare and Institutions Code section 15610.70, subdivision (a)(3). Moreover, Devlin does not identify any action or tactic by Stephen, Stephenie and/or Evan that overcame Cynthia's free will and caused her to execute the first trust amendment. Although the changes made in the first trust amendment are unfavorable to Devlin, he fails to show that the changes were inappropriate in light of the nature of his relationship or interactions with Cynthia. (Welf. & Inst. Code, § 15610.70, subd. (a)(4).) In any event, evidence of an inequitable result, without more, is insufficient to prove undue influence. (Welf. & Inst. Code, § 15610.70, subd. (b).)

As for the second trust amendment, it is not necessarily enough that Cynthia may have been vulnerable or that there was opportunity to influence her. (See *Estate of Fritschi, supra*, 60 Cal.2d at pp. 373-374, 377.) There is no evidence that Stephen, Stephenie and/or Evan actively participated in the preparation or execution of the second trust amendment or that Cynthia amended the trust as a result of Stephen, Stephenie and/or Evan's conduct. (Cf. *Keading, supra*, 60 Cal.App.5th at p. 1126 [when the sister was away, the defendant rushed his father to a UPS store to execute a new power of attorney designating the defendant as attorney in fact, allowing the defendant to execute a grant deed transferring property out of a trust].) Moreover, Stephen and Stephenie did not benefit from the changes in the second trust amendment. Under the first amendment to the trust, Stephen would receive 35% and Stephenie would receive 25% of the remainder of the trust estate. Under the second amendment to the trust, however, Stephen and Stephenie's shares of the remainder were reduced to a one-sixth share each. The fact that the alleged influencer did not actually benefit by the challenged instrument tends to refute the charge of undue influence. (*In re Ventura's Estate, supra*, 217 Cal.App.2d at pp. 58-59.) Similar to our earlier conclusion regarding the first trust amendment, Devlin also fails to show that the changes made in the second amendment

were inappropriate in light of the nature of his relationship or interactions with Cynthia. (Welf. & Inst. Code, § 15610.70, subd. (a).)

In his appellate brief, Devlin cites statements by Evan, Mark, and Shelby about Stephenie as evidencing undue influence. But we cannot infer from the cited statements that in 2013 or 2016, Stephen, Stephenie and/or Evan applied pressure or engaged in other conduct to overcome Cynthia's will that resulted in Cynthia's execution of the first or second amendment to the trust.

Devlin also urges that the probate court failed to consider fraud as an element of undue influence in relation to the second amendment to the trust. Pointing to "large inter vivos gifts," the sale of trust property, and Stephenie's statement to Cynthia's health care providers that on July 21, 2016, Cynthia was better, Devlin claims that Stephen and/or Stephenie made a number of misrepresentations.

Devlin is correct that fraud may be an element of undue influence. (*In re Estate of Stoddart, supra*, 174 Cal. At p. 610.) However, he fails to show a connection between the alleged misrepresentations by Stephen and/or Stephenie and the second trust amendment. (See *Id.* at pp. 611-612 [misrepresentation designed to compel the execution of an instrument not in accordance with the wishes of the settlor is relevant to a claim of undue influence].) Cynthia's attorney and another person, both of whom witnessed Cynthia signing the advance health care directive on the same date as the second amendment to the trust, declared under penalty of perjury that at the time of the signing Cynthia appeared to be under no duress, fraud or undue influence. The evidence Devlin points to as showing fraud was presented to the probate court and the court considered Devlin's claim of fraud as part of his undue influence claim. The probate court was not compelled to infer from the evidence presented that Stephen, Stephenie and/or Evan exerted excessive persuasion or coercion upon Cynthia to amend the trust. When evidence gives rise to conflicting reasonable inferences, one of which supports the finding of the probate court, the probate court's finding is conclusive on appeal.

11

(*Estate of Schultz* (1960) 54 Cal.2d 513, 518; *Hudson v. Foster* (2021) 68 Cal.App.5th 640, 661.)

## DISPOSITION

The order of the probate court denying Devlin Gardella's petition concerning internal affairs of a trust is affirmed.

                                                             /S/
                                                      MAURO, Acting P. J.

We concur:

   /S/
RENNER, J.

   /S/
WISEMAN, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.