Filed 5/13/25  Estate of Small CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In Re Matter of<br>ESTATE OF BARBARA SMALL | |
| MATTHEW PRESTON, et al.;<br><br>     Petitioners and Appellants,<br><br>v.<br><br>JAMIE LIEDER, an individual; and<br>DOES 1 through 50, inclusive,<br><br>     Respondents. | A171478<br><br>(Humboldt County<br>Super. Ct. No. PR2200195) |

Appellants filed a petition in Humboldt County Superior Court claiming that an amendment by Barbara Small to her Trust prepared by Eureka attorney Arthur Nielsen was the result of undue influence by Jamie Lieder, a long-time friend of Small's who also cared for her in the waning years of her life.  The petition proceeded to a bench trial, a trial that was not reported.  As best we can tell, the trial was three days during which the court heard from 10 witnesses, most significantly Mr. Nielson and Lieder.  The trial court thereafter issued a comprehensive statement of decision holding against appellants, setting forth in detail the facts and the law supporting its conclusions.  Appellants moved for a new trial, which the court denied.

1

Despite the absence of a reporter's transcript, appellants appeal, fundamentally arguing—or at least claiming to be arguing—that the trial court committed legal error.  We affirm.

## BACKGROUND

### The Parties and The General Setting[1]

This case involves the Estate of Barbara Small, who died in November 2021.  Appellants are Matthew Preston, Amy Wendt, and Jeffrey Kamalian (when referred to collectively, Appellants).  Preston and Wendt were Small's nephew and niece, respectively; Kamalian was a friend of Small's deceased son.

Respondent is Jamie Lieder, who was a friend of Small's for many years and who, along with her son, "provided care for Ms. Small towards the end of her life."

On January 24, 2017, Small established the Barbara Small Living Trust (Trust), naming her granddaughter as the primary beneficiary and Appellants as remainder beneficiaries.  On May 5, 2021 Small executed the first amendment to the Trust under which Appellants became the primary beneficiaries.  Then, on October 25, 2021, Small executed a second amendment to the Trust, naming Lieder and her son as sole beneficiaries under the Trust (and also successor trustees).  The second amendment was prepared by Eureka attorney Arthur Nielsen.

---

[1]	These facts are taken from the trial court's "Tentative Ruling and Proposed Statement of Decision," which became the statement of decision.  As indicated, the trial was not reported, and so we have no way to know precisely what was testified to or by whom.

**The Proceedings Below**

On July 5, 2022, Appellants filed a petition to "Determine Validity of Trust," followed shortly by an amended petition that, in Appellants' words, sought "to invalidate the Trust on grounds of undue influence and sought damages against Jamie Lieder for financial elder abuse."

Lieder filed her answer.

The matter came on for trial in February 2024, apparently on February 20, 21, and 22, as those are the only days for which there are minutes. Based on the minutes, 10 witnesses testified, including all three appellants, Dr. Dittmer (who we assume was Small's physician), and various people whose relationship to the setting are unknown. Most significant to the issue here, the witnesses included Mr. Nielsen and Lieder, whose testimony is addressed in detail in the statement of decision. Both sides filed written closing briefs.

On May 16 the trial court issued its tentative statement of decision, to which, on June 4, Appellants filed lengthy objections.

On June 25, the trial court filed its order adopting its tentative ruling and proposed statement of decision as its "Final Ruling and Statement of Decision." The court thereafter entered judgment denying Appellants' challenge.

On August 8, Appellants moved for a new trial on the ground of newly discovered evidence. It was accompanied by: (1) a declaration of Appellants' counsel purporting to authenticate various attachments, which declaration included a request for sanctions against Lieder; and (2) a memorandum of points and authorities.

On August 26, Lieder filed opposition, and the motion came on for hearing on October 11. On October 22, the trial court filed its order denying the motion.

On September 19, Appellants filed a notice of appeal.

## DISCUSSION

**Introduction**

As noted, the trial was not reported and there is no reporter's transcript. Nor a settled statement. Thus, we could refuse to even consider the appeal, as have numerous courts in varying circumstances. Indeed, in *Jameson v. Desta* (2018) 5 Cal.5th 594, our Supreme Court noted the significance of a reporter's transcript, and quoted from *Foust v. San Jose Construction Co. Inc.* (2011) 198 Cal.App.4th 181, 186–187, where the court "extensively catalogued the frequency of which appellate courts have declined to reach the merits of a claim raised in an appeal because of the absence of a reporter's transcript." The quotation went on to list no fewer than 12 cases. (*Jameson, supra*, 5 Cal.5th at pp. 609–610; see also Eisenberg, et al., Cal Practice Guide: Civil Appeals and Writs (The Rutter Group 2024) ¶ 4.45 (Eisenberg).)

Despite this, one reading Appellants' opening brief would not learn that the trial was unreported, at least not directly. Appellants' brief has a six-page "Statement of Facts" that, of course, cites to no trial evidence. As best we can tell from Appellants' references to the record, the "facts" are from Appellants' petition, some selected emails, medical records, or other items purportedly before the court, including on Appellants' motion for a new trial.[2] This is most inappropriate.

Confronted by Lieder's respondent's brief about the absence of a reporter's transcript, Appellants' reply brief asserts that they are not

---

[2]  Some of the references are to a document within a group of documents that Appellants refer to in their appellants' appendix as "admitted." Appellants' brief nowhere demonstrates what was in fact "admitted."

4

contending the statement of decision is not supported by substantial evidence, but rather that the trial court committed "legal error." That assertion, we note, is belied by Appellants' own words, including, as Appellants' reply brief puts it, the trial court's statement of decision "contains factual inaccuracies, inconsistent findings, and a misapplication of governing law." Indeed, Appellants' reply brief goes on, the trial court not only failed to apply the correct legal standards, it "made findings that were not merely implausible, but impossible, given the undisputed documentary evidence before it." Appellants cannot have it both ways, and we could well refuse to consider their appeal.

But because the trial court issued the comprehensive—and thoughtful—statement of decision here, we will address the issues raised by Appellants, doing so in light of the settled principles of appellate review, principles we distilled in *Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125–126:

"The most fundamental principle of appellate review is that 'A judgment or order of the lower court is *presumed* correct. All intendments and presumptions are indulged to support it . . . and error must be affirmatively shown.' (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) One of those presumptions is that the record has sufficient evidence to sustain the trial court's findings of fact. (E.g., *In re Marriage of Fink* (1979) 25 Cal.3d 877, 887.) And we have put it, ' "Where statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision." [Citation.]' (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)"

Appellants assert four arguments on appeal, the first two of which attack the trial court's handling of the undue influence issue, both of which, Appellants assert, were "legal error[s]." The first argument is that the trial court failed to "address the requisite factors" concerning undue influence; the second argument is that the court failed to shift the burden of proof. We consider the arguments together. And we easily reject them, based on the law of undue influence.

**The Law of Undue Influence**

Undue influence is defined by both statute and common law. As to the former, section 86 of the Probate Code defines it as "excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." (Welf. & Inst. Code, § 15610.70, subd. (a) [same].) In determining whether a result was produced by undue influence, a court must consider the vulnerability of the victim, the influencer's apparent authority, the actions or tactics used by the influencer, and the equity of the result. (*Ibid.*; Prob. Code, § 86.) The statutory framework is intended to "supplement the common law meaning of undue influence without superseding or interfering with the operation of that law." (Prob. Code, § 86.)

Under the common law, undue influence is described as "pressure brought to bear directly on the testamentary act, sufficient to overcome the testator's free will, amounting in effect to coercion destroying the testator's free agency." (*Rice v. Clark* (2002) 28 Cal.4th 89, 96; accord, *In re Estate of Stoddart* (1917) 174 Cal. 606, 612.) As the leading commentary describes it, citing numerous cases: "Undue influence may be proved by showing: (a) the existence of a confidential relationship between the testator and the individual alleged to have unduly influenced the testator; (b) a propensity on

6

the testator's part—whether by reason of old age, mental infirmity or otherwise—to have their free will usurped by the individual exercising undue influence; and (c) the execution of a testamentary document 'unduly benefitting' the person alleged to have influenced the testator. [Citations.]" (Ross et al., Cal. Practice Guide: Probate (The Rutter Group 2023) ¶ 15:153.) As our colleagues in Division Four have described it, undue influence is "the legal condemnation of a situation in which extraordinary and abnormal pressure subverts independent free will and diverts it from its natural course in accordance with the dictates of another person." (*Estate of Sarabia* (1990) 221 Cal.App.3d 599, 605.)

Normally, the party asserting undue influence bears the burden of proving it. However, as discussed below, in certain situations a presumption of undue influence can arise and if it does the person against whom it runs must show by a preponderance of the evidence that the transaction was freely made, without the exertion of undue influence. (*Bernard v. Foley* (2006) 39 Cal.4th 794, 800; *In re Estate of Graves* (1927) 202 Cal. 258, 262–263.)

**The Trial Court's Holding on Undue Influence Was Supported**

As noted, Appellants' first argument on undue influence is that the trial court committed "legal error" based on Appellants' claim that the court failed "to address the requisite factors," which factors, Appellants assert, are those in Welfare and Institutions Code section 15610.70, subdivision (a). That section is in the elder abuse law, but the same factors are, as noted above, in Probate Code section 86 and they are these four: "[t]he

vulnerability of the victim," "[t]he influencer's apparent authority," "[t]he actions or tactics used by the influencer," and "[t]he equity of the result."

Appellants devote eight pages of argument setting forth their version of those claimed factors that the trial court assertedly failed to consider. To the contrary: the trial court addressed the four factors.

As to Small's "vulnerability," the trial court addressed Small's condition, her health, her living in the nursing home, her capacity, and what she understood. And this included, as Mr. Nielsen testified, that "Small understood the effect of the Second Amendment and it was her desire to distribute her assets" in that manner.

As to second and third factors—Lieder's "authority" and her "actions"—the trial court addressed Lieder's involvement, what she did and didn't do. The trial court found that Lieder was in Small's room at the nursing home at the time Small was talking with Mr. Nielsen about the second amendment, and that she gave Small a clipboard for her to use when she signed the second amendment.[3] Nothing more. As Mr. Nielsen testified, Small understood the effect of the second amendment and that it was her desire to distribute her assets in that manner, based on his telephone conversation with Small. And the court concluded: "There was no evidence that Ms. Lieder instructed Ms. Small about how to distribute her estate or that she participated in the discussions between Ms. Small and attorney Nielsen." Moreover, the trial court found that Lieder's credibility "was not impeached or called into question," further finding that "Lieder's testimony is credible."

---

[3]     The evidence also showed that because of COVID-19 restrictions at the nursing home, Mr. Nielsen could not be physically present with Small.

8

And as to the fourth factor—"the equity of the result"—the trial court found that the "evidence established that Ms. Lieder had been friends with Ms. Small for many years, and she and her son provided care for Ms. Small towards the end of her life." By contrast, Appellants had only "minimal contact with M[s]. Small in the last years of her life." And, the court would go on to hold: "On balance, the Court finds that equitable considerations do not compel a different outcome. For the same reasons, the Court finds that the Second Amendment did not confer an undue benefit."

As the trial court noted, quoting our opinion in *Estate of Mann* (1986) 184 Cal.App.3d 593, 607, "the proof must be of circumstances inconsistent with voluntary action. Here, there is insufficient evidence that the Second Amendment was executed under circumstances inconsistent with voluntary action by Ms. Small. [¶] '[T]he mere fact of the beneficiary procuring an attorney to prepare the will is not sufficient "activity" to bring the presumption into play . . . ; or selection of attorney and accompanying testator to his office; . . . or mere presence in the attorney's outer office; . . . or presence at the execution of the will . . . ; or presence during the giving of instructions for the will and at its execution . . . ' " (See also *Estate of Swetmann* (2000) 85 Cal.App.4th 807, 821.)

Appellants' second argument on undue influence in that the trial court committed "legal error" in its "failure to shift the burden of proof." As noted, in some situations the evidence will be such that a presumption applies, but such presumption will arise only if "all" of the following three elements are shown: (1) the existence of a confidential relationship between the parties making the donative transfer and the person alleged to have exerted undue influence; (2) active participation by the latter in the actual preparation or execution of the donative instrument; and (3) the receipt by that person of

9

undue profit from the executed instrument. It is for the trier of fact to determine whether the presumption will apply. (*Estate of Sarabia, supra,* 221 Cal.App.3d at p. 605, and numerous cases there collected.)

The finder of fact here determined that the presumption did not apply. That finding is supported—indeed, by two separate findings that both the second and third of the requisite elements were missing.

As to element two, the court found that "Lieder did not cause the Second Amendment to be transcribed, did not direct the document to be written out in final form, and did not actively participate in the actual preparation of the second amendment." And as to element three, the trial court found that Lieder did not unduly benefit.

Appellants lastly argue on the undue influence issue that Lieder was a prohibited transferee. The argument is based on Probate Code section 21380, subdivision (a)(2), which provides as follows:

"(a) A provision of an instrument making a donative transfer to any of the following persons is presumed to be the product of fraud or undue influence: [¶] . . . [¶] (2) A person who transcribed the instrument or caused it to be transcribed and who was in a fiduciary relationship with the transferor when the instrument was transcribed."

That does not apply here, as the trial court expressly found "that the evidence was insufficient to show that Ms. Lieder is a prohibited transferee under Probate Code section 21380(a). The Court finds that Ms. Lieder did not cause the Second Amendment to be transcribed, did not direct the document to be written out in final form, and did not actively participate in the actual preparation or execution of the second amendment."

**Appellants Have Not Demonstrated That the Denial of the New Trial Was Error**

Appellants' third argument is that the trial court erred in denying their motion for new trial. The motion was, as noted, based on a claim of "newly discovered evidence," apparently including communications between Lieder and Mr. Nielsen and some entries from Mr. Nielsen's billing statements—or at least the inferences Appellants would draw from that "evidence." And, Appellants' argument runs, such evidence "directly contradicts the sworn testimony of both individuals." With no reporter's transcript, Appellants lack support for such a claim.

But beyond that the argument cannot prevail, not in light of the trial court's order here, which was this: "The court considered the papers and arguments submitted in support of, and in opposition to, Petitioners' motion for new trial. The court finds that the declaration submitted by Jamie Lieder in opposition to the motion provided a reasonable explanation regarding the newly discovered evidence. The court also finds that the declaration submitted in opposition to the motion by Arthur Nielsen provided a credible explanation consistent with his trial testimony regarding the materiality of newly-discovered evidence.

"The court also finds that the newly-discovered evidence would not have changed the result at trial.

"Accordingly, the motion is DENIED."

In short, the trial court, having heard the trial testimony of both Lieder and Mr. Nielsen, found Lieder's explanations for the new evidence to be "reasonable," "credible," and "consistent" with trial testimony. And that the new evidence would not have made a difference.

11

We review that ruling for abuse of discretion.  (Eisenberg, *supra*, ¶ 8.15 [Trial courts have broad discretion in granting or denying a motion for a new trial].)  To show such abuse, Appellants would have to demonstrate that the trial court's decision is " ' "so irrational or arbitrary that no reasonable person could agree with it." ' "  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)  This, Appellants have not done.

**The Statement of Decision Complied With the Law**

Appellants' fourth argument is that the statement of decision was "inadequate under Code of Civil Procedure section 632."

Section 632 states that a statement of decision must explain the "factual and legal basis for its decision as to each of the principal controverted issues at trial."  That issue here was undue influence.  The statement of decision addressed that in detail.

That law requires only that principal issues must be addressed, and that findings on subsidiary issues are not required.  A "principal" (or under former law, "material") issue is one that "is relevant and essential to the judgment and closely and directly related to the trial court's determination of the ultimate issues in the case."  (*Kuffel v. Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 569.)  The court need *not* address how it resolved intermediate evidentiary conflicts, or respond point by point to the various issues posed in the request for a statement of decision.  (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1126.)  Finally, the court need not address all the questions asked in Appellants' objections:  "[A]ll that is required is an explanation of the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request."  (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.)

Appellants rely on Code of Civil Procedure section 634, which provides that if the statement of decision does not resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."

Appellants' objections regarding the claimed "omissions or ambiguities" in the proposed statement of decision cited to claimed evidence that would have supported findings contrary to those found by the trial court, or attacked the legal premises of its rulings—in other words, mere disagreements with the trial court's findings. However, Code of Civil Procedure section 634 "applies only when there is an omission or ambiguity in the trial court's decision, not when the party attacks the legal premises or claims the trial court's findings are irrelevant or unsupported by evidence." (*Duarte Nursery, Inc. v. California Grape Rootstock Improvement Com.* (2015) 239 Cal.App.4th 1000, 1012.)

In any event, Appellants' position is unpersuasive. Neither Appellants' objections to the court's conclusions nor their opinions as to the trial court's alleged "incomplete understanding" of the case equate to "omissions" sufficient to trigger a section 634 inquiry. As Lieder aptly puts it, "Simply put, the trial court's resolution of a controverted issue in a manner unfavorable to the non-prevailing party does not equate to a failure to resolve that controverted issue." (Italics omitted.)

Appellants assert that "The trial court declined to address the objections, effectively asserting that the objection was overly lengthy." This, again in Lieder's words, "is a gross mischaracterization of the trial court's response to [Appellants'] objections." We agree. The trial court's order adopting tentative ruling states: "Petitioners' Objection spans 21 pages, and

13

consists of objections that reargue the facts, law, and merits of the case.  [¶] The Court will not address those issues or objections, as the Court finds that the Objection is excessive, seeks rulings on evidentiary facts, and attempts to reargue the merits of the case."

While the trial court was—in our view, justifiably—critical of the "excessive" length of Appellants' objections, it was so only in the context of the substance of those objections, which were found to be entirely limited to attempts to "reargue the merits of the case," in violation of the section 634's limitation to (1) identified "ambiguities" or (2) "controverted issues which the court failed to address" in the proposed statement of decision.

Finally, Appellants assert that the "Trial Court's Findings are Ambiguous."  However, Appellants' objections below made no reference to "ambiguity."  It has no place here.

## DISPOSITION

The judgment is affirmed.  Lieder shall recover her costs on appeal.

14

_____

RICHMAN, J.

We concur.

_____

STEWART, P.J.

_____

MILLER, J.

(A171478)